Alfred NORDE, Petitioner–Appellant,

v.

John P. KEANE, Superintendent, Sing
Sing Correctional Facility,
Respondent–Appellee.

Docket No. 01–2049.

United States Court of Appeals,
Second Circuit.

Argued: Nov. 6, 2001.

Decided: March 29, 2002.

402

Sheryl Gross–Glaser, Takoma Park, MD, for Petitioner–Appellant.

Sachin S. Pandya, Assistant Solicitor General, Queens County, Kew Gardens, NY (Eliot Spitzer, Attorney General of the State of New York, New York, NY, Michael Belohlavek, Deputy Solicitor General, of counsel), for Respondent–Appellee.

Before: MINER, STRAUB, and B.D. PARKER, JR., Circuit Judges.

MINER, Circuit Judge.

Petitioner-appellant Alfred Norde appeals from a judgment of the United States District Court for the Southern District of New York (Marrero, *J.*) dismissing his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. In 1988, Norde was sentenced in the New York State Supreme Court, New York County, to a prison term of twenty-five years to life after a jury found him guilty of first-degree burglary in violation of New York Penal Law section 140.30(2). In his *pro se* petition to the district court, Norde contended, *inter alia*, that the trial court (1) violated his Sixth Amendment rights when the state trial judge "remove[d][him] from [the courtroom during voir dire] without warning"; (2) "procured a waiver of [his] right to be present at [the] proceedings by improper delegation of a judicial function" to a court officer; and (3) denied him assistance of counsel when it failed to grant "[d]efense counsel's application for a brief adjournment." The district court denied the petition and declined to grant a certificate of appealability. We granted a certificate of appealability to consider the following issues: (1) whether Norde was denied the right to be present at voir dire and trial; (2) whether he waived that right; and (3) whether he was denied the assistance of counsel when the trial judge denied counsel's request for an adjournment. We conclude that the state court's denial of counsel's request for an adjournment to consult with her client upon Norde's removal from the courtroom and its communication with him through a court officer rather than counsel unconstitutionally deprived Norde of the assistance of counsel. We therefore reverse the judgment of the district court and remand the case with instructions to issue the writ unless within sixty days the State elects to retry Norde.

## BACKGROUND

On October 14, 1987, Annick Vandermore arrived at the private home where she worked as the director of household management located at 5 East 74th Street. She entered the house and, as she turned to close the front door behind her, saw Norde standing in the doorway. Norde

held the door open slightly, stated that he had a summons, and asked that Vandermore get the building superintendent. Vandermore informed him that there was no superintendent because the home was a private residence, but indicated that she would get someone to help him. Vandermore then attempted to close the door. Norde pushed the door open, shoved her aside, and closed the door. He then ordered her to hand over her purse and attempted to grab it from her. Vandermore resisted and screamed. Norde was able to wrest the purse from her and pulled her wallet out of the purse. Roger Sahli, the "project architect" at the residence, was inside the house at the time. Hearing Vandermore's screams, Sahli ran to the doorway and jumped on top of Norde, who dropped the wallet and struggled with Sahli. While the two were struggling, Vandermore's housekeeper also came to Vandermore's aid. Sahli instructed her to call the police. During the struggle, Norde freed himself from Sahli after biting his upper-left arm. Norde ran out of the house, and Sahli chased him down the street. In response to Sahli's requests for assistance, three men apprehended Norde and held him for about twenty minutes until the police arrived.

Norde was indicted on two counts of burglary in the first degree and two counts of robbery in the second degree in violation of New York Penal Law sections 160.10(2) and 140.30(2). Jury selection for his trial on the indictment began the morning of April 19, 1988 in the New York State Supreme Court, New York County (Rothwax, J.). Norde was represented at all times by his assigned counsel, Sarah Jones. Fifty prospective jurors were present in the courtroom and sworn for voir dire. Thereafter, fifteen were seated in the jury box and voir dire began. The court recessed for lunch before any jurors were selected. When court reconvened

that afternoon, but before any prospective jurors were brought into the courtroom, Norde addressed the trial judge in the following words:

Your Honor, the defendant has a statement to make. Justice Rothwax, the defendant at this time asks the Court tha[t] counsel be removed from the case because of the opportunity she has [not] given the defendant for any situation for defense in the case.

And as the court record showed, on 4/8/88, the defendant appeared here for court in view of having these which he was not produced [sic]. Counsel made no representation as far as the date it would be held to any scheduled hearings or would be ready for trial.

Counsel did not provide defendant with any words or documents or records ... of the defendant's statement that he would be ready to go to hearing and trial.

The defendant at this time has sent a letter to the attorney of record and the New York Bar Association asking for relief of counsel that represents defendant. That is already in the mail.

The defendant also now wishes to have privately retained counsel which his family is also in preparation to make. It is not in lieu to stall this trial. The defendant has not been adequately represented and does not have a chance to have the defendant represent himself at trial as Justice Rothwax already declined the fact that counsel made motions. It's been five or six months. She has not requested the appearance of the complaint.

My family has already been in the process of getting this retained counsel. And wishes to be assigned as counsel immediately.

The court ruled that "the application for re-assignment of counsel is denied." Norde then said: "I object to all further proceedings." The prospective jurors were then led back into the courtroom and voir dire continued. Soon thereafter, the People exercised four peremptory challenges and Norde's counsel exercised five. The trial judge inquired as to whether the remaining six prospective jurors were acceptable. Both the People and Norde's counsel responded that they were. At that point Norde again objected. The six jurors were sworn in and addressed by the court as follows:

Now ladies and gentlemen, you just heard the defendant yell out in the courtroom. He's been instructed by me not to do that. And I am going to instruct you to disregard any statements that the defendant makes in this courtroom[ ] other than if he should take the stand and testify. Just disregard it.

Immediately thereafter, the following exchange took place:

THE DEFENDANT: The defendant wishes to be represented by his own attorney.

THE COURT: Mr. Norde, I want you to remain quiet. If you don't remain quiet—

THE DEFENDANT: What you want to do?

THE COURT: You will either remain quiet or you will be removed.

THE DEFENDANT: If I will be represented by my own counsel I will be removed [sic].

THE COURT: You will remain quiet or you will be removed.

At this time ladies and gentlemen, . . . . since the defendant has brought up the issue of his not being represented by his own counsel, I think that it is important that I bring to your attention that the attorney who represented him has

represented him from the outset of this case. And that until this afternoon he has never made any protest about being represented by this counsel.

THE DEFENDANT: Objection. I made plenty of objections.

THE COURT: Remove the defendant from the courtroom.

[Norde is removed by a court officer.]

. . . .

THE COURT: He has never protested having this counsel until the time when this case was moved to trial this afternoon. The defendant will be allowed to return to this courtroom under circumstances where he indicates that he will follow the Court's instructions. If he does not follow the Court's instructions he will be removed from the courtroom. It is just that simple.

Please do not allow his activity in any way to effect your judgment. . . . I don't want you to feel either sympathy for him or prejudice against him. I want you to base your decision solely on the evidence in the case. Please do that.

After being given instructions to return the following day, the six sworn jurors left the courtroom. Norde's counsel then stated, "Your Honor, I would ask for a brief adjournment at this point. I would ask that the [remaining potential jurors] be excused." The court denied the request, and instructed Norde's counsel not to "make those applications in front of the [potential jurors]." Jury selection continued in Norde's absence. Fifteen of the remaining potential jurors were asked to sit in the jury box when their names were called. The court then stated: "Ladies and gentlemen, while we have been calling your name[s] I have had a court officer inquire of the defendant whether he wishes to be present during these court proceedings. And he has indicated to the

court officer that he does not wish to be present during these proceedings." In addition, the court again instructed the potential jurors that their ultimate decision had to be based on the facts of the case and not on Norde's courtroom behavior. Voir dire then proceeded until six additional jurors and two alternates were chosen, at which point the following took place:

THE COURT: [W]hile we were exercising the challenges I asked a court office[r] to go [up] and speak to the defendant, advise him that the proceedings would continue in his absence[,][a]nd ask him whether or not he wished to return to the courtroom. The court officer is now here. Would you place your name on the record please.

COURT OFFICER: Officer Banano, and the defendant advises me that he does not want to take part in the proceedings.

THE COURT: I will proceed in his absence. I am going to let you make your record fully. I have no problem with you doing that but we are going to do that after jury selection.

MS. JONES: That is fine.

Voir dire then resumed and continued until the third and final alternate juror was chosen, at which point all jurors were excused. The trial judge then directed that Norde be brought back into the courtroom and the following exchange took place:

THE COURT: I have asked that you be brought out Mr. Norde because we have to make a record on a number of things. After that if you don't want to be present at your trial you won't have to be present at your trial. So let me just tell a few things to you, okay.

Under the law, you know or you should know that you have a right to be present at your own trial. But [you may] give up or waive that right or forfeit that right by your [behavior].

Now you are on notice, of course, having been present for at least part of the jury selection that your trial has begun. I put you on notice that your trial will go forward in your presence or in your voluntary absence. If you choose not to be present I place you on notice that the case will proceed.

Obviously you should understand that if you fail to appear in court during your trial you are in effect also giving up your right to testify.... Do you understand what I have said?

THE DEFENDANT: No I don't. I object. I want my own attorney. I am not present of representing the trial [sic] until I receive the counsel of my choice.... Counsel and I don't get along.

When there is no defense I cannot have a fair trial. I was brought here by force and I was returned to this court after the jury was picked.

THE COURT: The record should reflect ... [t]hat Ms. Jones has been the lawyer ... since the inception of the case [and][t]hat it wasn't until ... this afternoon ... after the pre-trial hearings ... that Mr. Norde ever state[d] in this courtroom a desire to be represented by anybody else.

It is this Court's clear judgment based on 18 years of experience that this defendant doesn't want to go to trial with this case. His application to have Ms. Jones relieved at this point in time is denied.

Thereafter, Norde's counsel requested a mistrial because the comments the court made earlier to the jury regarding Norde's behavior "prejudiced [Norde]." She also objected to Norde's removal from the courtroom, stating that "the courtroom [should] have been cleared and [Norde]

should have been ... issue[d] a warning and given the option of being present or not." The court denied counsel's application for a mistrial, noting that "[c]ourt officers on a number of occasions went up to the defendant while he was upstairs [and][a]dvised him that he could be returned to the courtroom at any time if he wished to do so." The court also stated that "[i]ndeed, [Norde] has returned to the courtroom now against his will." In response, Norde's counsel pointed out that "the information [regarding Norde's right to return to the courtroom] was communicated to [Norde] through a court officer and not through an attorney." In response, the judge stated:

It is interesting Ms. Jones, now that you bring that up[,] that I had [asked you once all the jurors were selected and excused for the day] if you wanted to go up to him and speak to him and you said you didn't. And it is clear to me that you shouldn't because given the relationship between you at this point in time I felt and I believe that you felt that that would be more in the nature of a provocation.

So I find it ironic that although given the opportunity after the jury had been excused you declined the opportunity to go in and speak to your client because of the deterioration in the relationship between you. But now you claim you should have been offered the opportunity at an earlier time.

As appears from the above, counsel was not given an opportunity to consult with her client, following Norde's removal from the courtroom, until voir dire was completed and all the jurors and alternate jurors were selected, sworn, and excused.

The trial began the following day, and consisted of the testimony of Vandermore, Sahli, Norde, Norde's supervisor at Travelers Process Service World Wide, and one of the arresting officers. Prior to Norde's testimony, the court again directed his removal from the courtroom after the following exchange:

THE COURT: Ms. Jones, are there any witnesses you wish to call?

THE DEFENDANT: Yes, I have several witnesses to call, Your Honor.

THE COURT: Mr. Norde[,] I don't want you to make statements in open court. I have advised you of that previously in front of the jury and outside of the presence of the jury. I am addressing your attorney. You will remain quiet. Remain quiet.

THE DEFENDANT: She addresse[d] me, Your Honor.

THE COURT: Mr. Norde, I have indicated to you that you are not to speak up in open court.

THE DEFENDANT: Yep.

[Norde is then called to testify.]

THE DEFENDANT: Your Honor, I want my defense witnesses to be present.

THE COURT: Mr. Norde[,] I have indicated to you [that] if you want to testify you will testify from the witness chair.

THE DEFENDANT: I will testify, Your Honor.

THE COURT: If you are going to testify, testify now.

THE DEFENDANT: Your Honor I wish for my defense counsel—

THE COURT: Remove the defendant from the courtroom.

Once again, a court officer removed Norde from the courtroom. On this occasion, however, Norde was able to consult with his attorney immediately after his removal and thereupon returned to the courtroom. Upon entering the courtroom, Norde sought to address the jury directly, and was again admonished by the judge.

Shortly thereafter, he testified in his own defense, with direct examination by Ms. Jones, and remained in the courtroom for the rest of the trial.

The jury convicted Norde of first-degree burglary, and he was sentenced as a persistent felony offender to a term of imprisonment of twenty-five years to life. Judgment was entered on November 16, 1988. Norde appealed his conviction to the New York State Supreme Court, Appellate Division, First Department. His assigned counsel's brief argued that (1) the People failed to prove the element of physical injury required for first-degree burglary; (2) the People made several prejudicial remarks during summation; and (3) a *Sandoval* violation occurred.[1] Norde filed a *pro se* supplemental brief in which he argued that he was denied his right to be present at trial and that the People failed to prove his guilt beyond a reasonable doubt. On October 22, 1992, the Appellate Division affirmed Norde's conviction in a short published opinion, discussing only the evidence relating to the physical injury involved, the allegedly prejudicial remarks, and the prosecutor's inquiry into Norde's prior convictions. *See People v. Norde*, 186 A.D.2d 456, 589 N.Y.S.2d 32 (1st Dep't 1992). No reference was made to any of Norde's other arguments.

On November 19, 1992, Norde moved for reargument in the Appellate Division, based on the New York Court of Appeals' October 27, 1992 decision in *People v. Antommarchi*, 80 N.Y.2d 247, 604 N.E.2d 95, 590 N.Y.S.2d 33 (1992). In *Antommarchi*,

the defendant's conviction was reversed because during voir dire several potential jurors were questioned about their ability to be jurors at a side bar outside the hearing of the defendant. The New York Court of Appeals held that such a procedure during voir dire denied the defendant his Sixth Amendment right to be present during a material portion of his trial. Norde's motion for reargument was denied on February 25, 1993. Norde sought leave to appeal to the New York Court of Appeals, and leave was denied on February 11, 1993. *See People v. Norde*, 81 N.Y.2d 844, 611 N.E.2d 783, 595 N.Y.S.2d 744 (1993). Norde then moved for a rehearing, which was granted. On April 30, 1993, after reconsideration, leave was again denied. *See People v. Norde*, 81 N.Y.2d 974, 615 N.E.2d 233, 598 N.Y.S.2d 776 (1993). Norde then filed a motion for a writ of *coram nobis*[2] with the Appellate Division, First Department. On June 22, 1993, the Appellate Division "denied in its entirety" Norde's motion for the writ.

Norde filed a *pro se* petition for a writ of habeas corpus dated April 15, 1997 in the United States District Court for the Southern District of New York. On June 26, 1997, the district court dismissed the petition as untimely, the court having found that it was time-barred by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254. However, the court granted a certificate of appealability on that issue. In July 1998, we vacated the district court's judgment and remanded the case after finding that

---

1. In New York state courts a defendant may request a preliminary hearing, known as a *Sandoval* hearing, to determine whether, if he elects to testify, his prior criminal record may be used to impeach his credibility. *People v. Sandoval*, 34 N.Y.2d 371, 314 N.E.2d 413, 357 N.Y.S.2d 849 (1974).

2. The writ of *coram nobis* is an ancient common law writ that "thus far ... has been sanctioned by the [New York] Court of Appeals only in the context of ineffective assistance assistance of appellate counsel." *Aparicio v. Artuz*, 269 F.3d 78, 87 n. 1 (2d Cir. 2001); *see also People v. Bachert*, 69 N.Y.2d 593, 599, 516 N.Y.S.2d 623, 627, 509 N.E.2d 318, 322 (1987).

in cases such as Norde's, where a conviction has become final prior to the effective date of the AEDPA, prisoners have a grace period of one year after the effective date in which to file their habeas corpus petitions. *Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir.1998). Accordingly, the case proceeded in the district court.

On October 22, 1999, Southern District Magistrate Judge James C. Francis IV held an evidentiary hearing in order to "expand the record with respect to the circumstances under which Mr. Norde was excluded from the courtroom during jury selection in his trial, and the circumstances under which he ultimately returned." At the hearing, Norde testified that, among other things, he was never given any warning prior to his removal and was never asked if he wished to return to the courtroom during jury selection. In a report and recommendation dated February 9, 2000, Magistrate Judge Francis recommended that the petition be dismissed, concluding that Norde's behavior during voir dire was "sufficiently disruptive to warrant his removal."

The magistrate judge also found that Norde did not sufficiently demonstrate that he had been prejudiced by the court's denial of his counsel's request for a brief adjournment for consultation immediately following Norde's initial removal from the courtroom. In a decision and order dated November 27, 2000, the district court adopted the magistrate judge's report and recommendation "in full and for the reasons stated therein" and dismissed Norde's petition. The district court also held that "[a]s no substantial question is presented, the Court denies a certificate of appealability and certifies that any appeal would not be taken in good faith within the meaning of 28 U.S.C. § 1915." Judgment was entered on November 30, 2000, and Norde filed a timely notice of appeal. We considered the notice of appeal as an application for a certificate of appealability. In an order dated June 4, 2001, we granted Norde a certificate of appealability "to consider the issues of whether [he] was denied the right to be present at voir dire and trial, whether he waived that right, and whether he was denied the assistance of counsel when the trial judge denied counsel's request for an adjournment."

## DISCUSSION

### I. Standard of Review

We review *de novo* a district court's decision to grant or deny a petition for a writ of habeas corpus. *Morris v. Reynolds*, 264 F.3d 38, 45 (2d Cir.2001).

Under the AEDPA, a federal court may not grant a habeas petition "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d); *see also Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir.2001). If a state court has failed to adjudicate a claim "on the merits," the AEDPA's more stringent standard does not apply, and we instead review both questions of law and mixed questions of law and fact *de novo*. *Washington v. Schriver*, 255 F.3d 45, 55 (2d Cir.2001). The AEDPA is applicable to habeas petitions filed after the statute's effective date, April 24, 1996. Because Norde's petition was filed after the effective date, the AEDPA governs our review of his petition. Therefore, in order to determine which level of deference to apply here, we must decide whether Norde's Sixth Amendment claims were adjudicated on the merits in state court.

■ A state court "adjudicates" a petitioner's federal constitutional claims "on the merits" when "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir.2001). In applying this two-part test, we consider: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." *Id.* at 314 (quoting *Mercadel v. Cain*, 179 F.3d 271, 274 (5th Cir.1999)) (internal quotation marks omitted). In this regard, we have given a broad reading to state court dispositions, noting that "[a] state court need only dispose of the petitioner's federal claim on substantive grounds, and reduce that disposition to judgment. No further articulation of its rationale or elucidation of its reasoning process is required." *Aparicio*, 269 F.3d at 93–94 (citing *Sellan*, 261 F.3d at 312). Furthermore, an issue raised may be considered adjudicated "on the merits" for AEDPA purposes even when the state court does not specifically mention the claim but uses general language referable to the merits. *Id.* at 94; *Sellan*, 261 F.3d at 312–14.

■ Here, the Appellate Division's opinion on direct review addressed only Norde's arguments that the evidence relating to the physical injury was insufficient, that the prosecutor was improperly allowed to make prejudicial remarks during summation, and that the prosecutor's inquiry into Norde's prior convictions was prejudicial. *See People v. Norde*, 186 A.D.2d 456, 589 N.Y.S.2d 32 (1st Dep't 1992). The court did not mention Norde's Sixth Amendment claims, and the opinion does not contain any language, general or specific, indicating that those claims were considered and denied on the merits. Norde again raised his Sixth Amendment claims in his motion to reargue before the Appellate Division. The Appellate Division denied the motion, stating only as follows: "[U]pon reading and filing the papers with respect to said motion, and due deliberation having been had thereon, [i]t is ordered that the motion be and the same is denied." Norde then moved for leave to appeal to the New York Court of Appeals. The motion was denied and was denied again after reargument. Following the rulings of the Court of Appeals, Norde attempted to raise his Sixth Amendment claims to the Appellate Division in a petition for a writ of *coram nobis*. That petition was "denied in its entirety."

Because the Appellate Division never indicated in any way that it had considered Norde's Sixth Amendment claims, we find that those claims were not adjudicated on the merits, and therefore that the AEDPA's new, more deferential standard of review does not apply. It is of no consequence that Norde's Sixth Amendment claims were subsequently raised in a motion for reargument and in a petition for a writ of *coram nobis*, both of which were denied with general language. Under New York law, a motion for reargument is an application to the appellate court to exercise its discretion to "order a reargument or reconsideration of the appeal." N.Y.Crim. Pro. Law § 470.50 (1994). Such an order "confine[s] [the appellate court's] reconsideration to re-examination of the issues as previously argued or submitted upon the appeal proper." *Id.* Thus, an order granting or denying a motion to reargue is not a decision on the merits. Rather, it is the court's determination as to whether its own prior ruling should be reconsidered. Accordingly, the Appellate Division's decision on Norde's reargument motion is not a factor in determining

whether his claims were adjudicated on the merits. Similarly, because, under New York law, a writ of *coram nobis* may issue based only on claims of ineffective assistance of appellate counsel, *Aparicio*, 269 F.3d at 87 n. 1, the Appellate Division's ruling on Norde's petition for the writ does not affect the question of whether his Sixth Amendment claims were adjudicated on the merits.

Thus, because the merits of Norde's Sixth Amendment claims were not adjudicated in the state courts on direct review or otherwise, we review his claims de novo.

## II. *Norde's Sixth Amendment Claims*

Norde argues that the district court erred in refusing to grant his petition because his removal from the courtroom during jury selection and the trial court's failure to grant his counsel an adjournment for consultation deprived him of his Sixth Amendment rights to be present at his trial and to the assistance of counsel.[3] The State contends that we should reject Norde's claims because his behavior in the courtroom constituted a waiver of his right to be present, and the trial court's denial of the adjournment did not deprive Norde of his right to counsel.

### A. *Norde's Right to Be Present*

■■■ A criminal defendant has the right to be "present at all stages of the trial," *Faretta v. California*, 422 U.S. 806, 820 n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), including jury selection, *Lewis v. United States*, 146 U.S. 370, 373–76, 13 S.Ct. 136, 36 L.Ed. 1011 (1892). However, that right is not absolute and may be waived, either explicitly or by the defen-

dant's conduct. *Illinois v. Allen*, 397 U.S. 337, 342–43, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). The Supreme Court has stated that

a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.

*Id.* at 343, 90 S.Ct. 1057. Even if a defendant's behavior is disruptive enough to warrant removal, the defendant's right to be present can be "reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Id.*

Norde argues that under *Allen* his behavior was not so disruptive as to warrant removal. *Allen* involved a defendant who made multiple outbursts during voir dire. The defendant's behavior in that case consisted of arguments with the judge, the tearing up and throwing of papers on the courtroom floor, and a statement to the judge that "[w]hen I go out for lunchtime, you're ... going to be a corpse here." *Id.* at 340, 90 S.Ct. 1057.

Norde's interruptions began before the prospective jurors were brought back after lunch recess, when he explained to the court that he wished to have new counsel because his current counsel "ha[d][not] given [him] any situation for defense in the case." Norde also explained that he had sent a letter to his attorney as well as to the New York State Bar Association ask-

---

**3.** The Sixth Amendment provides, in pertinent part:

In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation; to

be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

ing for "relief of counsel," and that his family was "prepar[ing]" to get him "privately retained counsel." The court denied the request without explanation, and did not inquire into Norde's request.

■ "Where a defendant voices a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction." *McKee v. Harris*, 649 F.2d 927, 933 (2d Cir.1981) (quotation marks omitted). *McKee* involved a state prisoner's petition for a writ of habeas corpus in which he argued, *inter alia*, that his Sixth Amendment right to counsel was violated when the state trial judge failed to inquire into his request for new counsel. On the second day of jury selection, McKee requested a new attorney, claiming that his counsel told him he was guilty of the crime charged. *Id.* at 929. The trial court did not conduct an inquiry into this request. McKee argued in his habeas petition that the court's failure to inquire violated his Sixth Amendment rights. We held that McKee's right to counsel was not violated in his case because, while the trial judge "should have conducted a formal inquiry, the failure to do so ... was harmless." *Id.* at 933. We held further that where a defendant articulates the reasons for his request for new counsel, the failure of a trial judge to inquire into that request is a "procedural irregularity," which may not itself be a basis for granting habeas relief. *Id.* Instead, in order to succeed on this Sixth Amendment claim, the petitioner must demonstrate that he was harmed by the trial judge's failure to inquire. *Id.* Here, Norde presented the trial judge with the basis for his request for new counsel. Although the trial judge should have inquired into Norde's belief that he was not being properly represented, a review of the record shows that Norde at all times received vigorous and capable representa-

tion by his assigned counsel. Accordingly, as in *McKee*, the failure of the trial judge to inquire into Norde's request was harmless.

Following the court's summary denial of Norde's request, the court brought the jury in to continue voir dire. Norde next spoke out after the first six jurors were accepted by counsel for both sides. Despite the court's warning to Norde to "remain quiet or you will be removed," Norde again requested new counsel and was again warned not to speak out. The court then informed the jury that "the attorney who represented [Norde] has represented him from the outset of this case" and that "until this afternoon [Norde] has never made any protest about being represented by [Ms. Jones]." Norde then stated, "[o]bjection. I made plenty of objections." At that point he was removed from the courtroom. While the court's failure to inquire into Norde's request for new counsel turned out to be harmless, an inquiry into Norde's request may have prevented his later interruptions.

■ We also here note that the trial judge's explanation to the jury of the basis for its denial of Norde's request for new counsel was inappropriate. While the trial judge thought that it was "important" that he "bring to [the jury's] attention that the attorney who represented [Norde had] represented him from the outset of this case," we do not think it was either important or proper, especially since the judge had refused to conduct a further inquiry on the issue. "[A] trial judge must be especially cautious and circumspect in language and conduct during a jury trial." *Santa Maria v. Metro–North Commuter R.R.*, 81 F.3d 265, 273 (2d Cir.1996) (quoting *Coast–to–Coast Stores, Inc. v. Womack–Bowers, Inc.*, 818 F.2d 1398, 1401 (8th Cir.1987)). The trial judge apparently thought that it was necessary to discuss

the merits of Norde's application and to justify his ruling to the jury, but such a discussion was unnecessary because it concerned an issue outside the scope of the jury's duty as fact-finder and may have been prejudicial to Norde. Rather, the trial judge should have restricted his comments to the jury to an instruction that the jury was not to base its ultimate decision on Norde's behavior in the courtroom.

▇ In *Allen*, the Supreme Court stated that "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." 397 U.S. at 343, 90 S.Ct. 1057. While Norde's behavior was significantly less egregious than that of the defendant in *Allen*, we conclude that Norde's removal was within the trial judge's broad discretion. Although it would have been preferable for the court to explain to Norde the potential ramifications of his removal, we cannot say that Norde's removal was improper. We have held that "even absent a warning, a defendant may be found to have forfeited certain trial-related constitutional rights based on certain types of misconduct." *Gilchrist v. O'Keefe*, 260 F.3d 87, 97 (2d Cir.2001). The fact that Norde's conduct may have been based on what he believed to be a compelling reason—his desire to retain his own counsel—does not excuse his misconduct. *Allen* makes clear that a defendant does not have the right to disrupt the trial proceedings. 397 U.S. at 343, 90 S.Ct. 1057. On two occasions, the jury selection process was interrupted by Norde's "objections." The trial judge characterized one of Norde's objections as a "yell." In addition, the court warned Norde that he would be removed if he did not remain quiet. We think that Norde's behavior was disruptive enough to be considered a waiver of his right to be present and to warrant removal. Accordingly,

Norde was not unconstitutionally denied his right to be present.

### B. *Norde's Right to Counsel*

Norde also argues that he was denied the assistance of counsel when, immediately following his removal during voir dire, his counsel's request for an adjournment was denied. The State contends that the denial did not deprive Norde of his right to counsel, and that, even if it did, any "error [was] harmless." The magistrate judge's report and recommendation denied habeas relief on this ground, stating that "[a]lthough it certainly might have been advisable for the trial judge to have granted [the adjournment], Mr. Norde has made no showing that he was prejudiced by the denial."

▇ A defendant who claims ineffective assistance of counsel based on his attorney's strategies or decisions must demonstrate that he was prejudiced by his counsel's conduct. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, a defendant who claims denial of counsel at a critical stage in the proceedings need not show prejudice. *United States v. Cronic*, 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). This is so because "[t]he presumption that counsel's assistance is essential requires [a finding] that a trial is unfair if the accused is denied counsel at a critical stage of his trial." *Id.* at 659, 104 S.Ct. 2039. Because the selection and challenge of jurors constitutes a critical stage of the trial, *see Gomez v. United States*, 490 U.S. 858, 873, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989); *Lewis*, 146 U.S. at 373–76, 13 S.Ct. 136, Norde need only demonstrate that he was actually or constructively denied his right to counsel, not that the denial prejudiced the outcome of his trial.

Norde's removal from the courtroom prevented him from having contact with his counsel during voir dire. Six jurors and three alternate jurors were chosen in Norde's absence and without his input. Although Norde declined the court's invitation to return to the courtroom during the balance of the voir dire, he was not permitted to consult with counsel prior to making that decision, nor was the invitation to return issued through counsel. In light of these circumstances, we are presented with the question whether the court's denial of counsel's request for an adjournment to consult with her client was a constitutionally impermissible denial of the right to counsel.

The direct result of the trial court's denial of counsel's request for an adjournment was that jury selection proceeded and concluded without any participation by Norde. He was unable to consult with his counsel, and counsel was unable to advise him during the course of the examination of those who would decide his fate. The Supreme Court has instructed that "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy,* 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)). Despite the broad discretion granted trial courts, we think that the court's failure to grant a brief adjournment amounted to an unreasoning and arbitrary insistence upon expeditiousness. The court need only have granted a brief adjournment to ensure that Norde was able to consult with his attorney. While it is true that jury selection would have been temporarily halted, we think that any concerns regarding a delay in the proceedings were outweighed by the importance of consultation between attorney and client, particularly at this critical stage of the trial.

Close consultation between attorney and client is essential to the informed exercise of challenges to prospective jurors. Because Norde was denied an adjournment that would permit such consultation, he was unable to participate in a phase of his trial that was of major importance to him. *See Gomez v. United States,* 490 U.S. 858, 873, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) (explaining that jury selection is a critical stage in a trial). At the very least, a brief adjournment would have allowed some exchange between attorney and client in regard to the strategy to be employed in the selection of jurors if Norde chose not to return to the courtroom. *See Estelle v. Williams,* 425 U.S. 501, 512, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (noting that "once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney").

Moreover, the trial judge's later explanation of the basis for his denial of the adjournment request was not well founded. The trial judge speculated that counsel felt, "given [her] relationship [with Norde]," that it would be "in the nature of a provocation" for her to consult with him. The judge's statement in this respect was inconsistent with his summary denial of Norde's claim for new counsel. In point of fact, counsel provided competent representation and apparently consulted with her client on numerous occasions throughout the trial. If the judge believed that counsel's relationship with Norde had deteriorated to the extent that she could not consult with him, the judge had even more reason to explore Norde's request for new counsel. Having been denied that request, Norde was entitled to all the benefits of

representation that his counsel could provide. *See Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377 (1940) ("The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment."). Accordingly, by denying the request for adjournment for consultation immediately following Norde's departure from the courtroom, the trial court denied Norde the full panoply of rights associated with the attorney-client relationship.

The trial judge missed another opportunity to allow Norde to consult with his attorney during voir dire when the invitation to return to the courtroom was communicated to Norde through a court officer rather than his attorney. While Norde's conduct may have been sufficient to warrant his removal from the courtroom in the first instance, he was not permitted to consult with his attorney before declining the invitation to return. The Supreme Court has explained that "the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance." *Geders v. United States*, 425 U.S. 80, 88, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). The court's failure to allow Norde to consult with his attorney meant that Norde's refusal to return to the courtroom was likely made without an understanding of the potential ramifications of that decision. His attorney could have explained to him the value of his presence and the consequences of his absence during jury selection. Had Norde accepted the court's invitation to return, he would have been able to participate in the selection of the remaining jurors. Indeed, Norde's *pro se* petition to the district court contained a sworn affidavit explaining that, if present, he would have "seriously advised counsel to challenge" several of the chosen jurors.

The trial court's denial of Norde's counsel's request during voir dire to consult with her client and its extension of an invitation to return through a court officer rather than counsel, constituted a denial of counsel at a critical stage of the proceedings. Norde was deprived of both his right to participate in jury selection and his opportunity to make an informed decision as to whether to return to the courtroom.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed, and this case is remanded with instructions to grant Norde's application and to direct his release unless within sixty days the State elects to retry him.