No. 02-231

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 247

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

JOSEPH ANTHONY ACETO,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                      In and for the County of Flathead, Cause No. DC 2000-174(A)
                      The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Kristina Guest, Appellate Defender Office, Helena, Montana

        For Respondent:

                Honorable Mike McGrath, Montana Attorney General, C. Mark Fowler,
                Assistant Attorney General, Helena, Montana; Ed Corrigan, Flathead County
                Attorney, Kalispell, Montana

Submitted on Briefs:  July 24, 2003

Decided:  September 8, 2004

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      Joseph Anthony Aceto was tried before a jury in the Eleventh Judicial District and convicted of two counts of Attempted Deliberate Homicide and one count of Aggravated Kidnaping. He appeals on the grounds that the District Court violated his fundamental Constitutional right to be present and appear in person in all criminal proceedings; and that the District Court erroneously denied Aceto's appointed counsel's motion for a mistrial. We reverse on Issue One and do not reach Issue Two since Issue One is dispositive.

## ISSUES

¶2      1. Did the District Court violate Aceto's fundamental Constitutional right to be present and appear in person in all criminal proceedings when it removed him from the courtroom without first giving him a warning and did not later provide him with an opportunity to return to the courtroom?

¶3      2. Did the District Court err when it denied a motion for a mistrial sought by Aceto's standby counsel when the District Court ordered him to take over Aceto's representation mid-trial after Aceto's removal from the courtroom prevented Aceto from continuing *pro se*?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      Aceto was accused of the attempted deliberate homicides of Rocky Hoerner and Eileen Holmquist, and the aggravated kidnaping of Holmquist. Attorney Mark Sullivan was assigned to defend him. Aceto pled not guilty to the charges, and requested a jury trial.

¶5      Before the trial occurred, Aceto moved for permission to represent himself *pro se*. His motion was granted, but the District Court ordered Sullivan to remain on the case as

2

standby counsel. Aceto remained incarcerated until his trial, and used Sullivan to assist him with acquiring materials that were not otherwise accessible to Aceto from confinement.

¶6 Aceto's trial began with jury selection on January 7, 2002. Sullivan conducted *voir dire* on Aceto's behalf.

¶7 The presentation of evidence began on January 8, with Aceto representing himself. Aceto made an opening statement and cross-examined the first several prosecution witnesses. During his cross-examination of Holmquist, Aceto became agitated and frustrated when the State's objections to the relevancy of his questions were sustained. The District Court warned Aceto that Sullivan would take over his defense if Aceto did not follow the court's instructions. As the court attempted to instruct him, Aceto interrupted the court and responded, repeatedly, "Do what you gotta do," until the judge ordered him removed from the courtroom. Aceto then shouted profanities at the court and the witness and threw his files at Holmquist as he left the courtroom. (A verbatim transcript of the exchange is set forth at ¶ 18.) After Aceto was ejected from the courtroom, court recessed for the day.

¶8 On the morning of January 9, outside the presence of the jury, Aceto apologized to the court and objected to being removed from his case. The District Court refused and ordered Sullivan to take over the defense. The court further informed Aceto that he would not be permitted back in the courtroom, but could view the remainder of the trial via closed-circuit television. Aceto explained to the District Court that he would rather remain in his cell.

3

¶9     Sullivan moved for a mistrial on the grounds that he was not prepared to take over the defense. As standby counsel, he explained, he had not worked on the substantive aspects of Aceto's case and did not know Aceto's trial strategy or the details of his self-defense argument. The District Court denied the motion for mistrial, but allowed Sullivan the rest of the morning to prepare his case, with the trial to resume in front of the jury after lunch. The District Court removed Aceto from the courtroom and called the jury in to explain that Aceto would no longer be present in the courtroom but would watch the trial via a closed-circuit television system, and that Sullivan would conduct the defense on Aceto's behalf. The court adjourned the trial until the afternoon.

¶10    Also on the morning of January 9, the Flathead County Computer Services office received and fulfilled a request from the District Court to set up a video link between the courtroom and the "Jail Activity Room." The Computer Services Director and an assistant configured two computers and purchased other necessary components. They tested the system to ensure that sound and video quality was acceptable. When the Computer Services Director learned that Aceto might testify via the closed-circuit television system, he borrowed a video projector which would allow the jurors to view Aceto's testimony. When the trial resumed that afternoon, prior to the seating of the jury, a Computer Services staff member briefly explained to the court the workings of the closed-circuit television system.

¶11    The jury returned and Sullivan resumed the cross-examination of Holmquist. The State then called several more witnesses, only one of whom Sullivan cross-examined.

4

Subsequently, during the testimony of two more State witnesses, Sullivan requested and was granted short recesses so that he could go to the Detention Center and consult with Aceto. On each occasion after returning from his consultation with Aceto, Sullivan declined to cross-examine the current witness.

¶12 After the jury was dismissed for the day, the District Court held a brief hearing for an offer of proof in response to a defense motion. Aceto was not present in the courtroom but observed this proceeding through the closed-circuit television system. At one point during Sullivan's offer of proof, the District Court questioned Aceto as to whether he could hear the proceedings and Aceto nodded affirmatively in response.

¶13 The trial resumed on January 10 without the jury present. Aceto was present in the courtroom along with Sullivan and the prosecutor. The District Court explained that Aceto was scheduled to testify that morning, and that arrangements had been made for him to testify via the closed-circuit television system. Aceto declared that he would not testify "through any system." Aceto stated that he did not wish to participate further in the proceedings and that Sullivan would not call any witnesses nor address the jury on his behalf. As per Aceto's instructions, Sullivan neither called witnesses nor made a closing argument.

¶14 The jury found Aceto guilty on all counts and the District Court sentenced him to 210 years in prison with no eligibility for parole. This appeal timely followed.

**STANDARD OF REVIEW**

5

¶15   Whether a criminal defendant's right to be present at the critical stages of his or her trial has been violated is a question of constitutional law. Our review of questions of constitutional law is plenary. *State v. Kennedy*, 2004 MT 53, ¶ 13, 320 Mont. 161, ¶ 13, 85 P.3d 1279, ¶ 13 (citation omitted). We review a district court's conclusions of law to determine whether its interpretation of the law is correct. *Kennedy*, ¶ 13 (citation omitted).

¶16   A district court's determination of whether to grant a motion for a mistrial must be based on whether the defendant has been denied a fair and impartial trial. This Court reviews a district court's grant or denial of a motion for a mistrial for abuse of discretion. *Kennedy*, ¶ 14 (citation omitted).

## DISCUSSION

## ISSUE ONE

¶17   1. Did the District Court violate Aceto's fundamental Constitutional right to be present and appear in person in all criminal proceedings when it removed him from the courtroom without first giving him a warning and did not later provide him with an opportunity to return to the courtroom?

¶18   We set forth below the colloquy which led to Aceto's ejection from the courtroom. After the State's objections to Aceto's cross-examination of witness Holmquist were sustained, the following exchange occurred:

> THE COURT: I agree, it's not relevant. This isn't relevant to the issues that are –

6

MR. ACETO:  There's other witnesses that are going to testify, and if I don't get out –

THE COURT:  Not if I don't say it's relevant they aren't going to.  This is not –

MR. ACETO:  Well evidently nothing is relevant to you.

THE COURT:  This is not relevant.  If you don't follow my instructions you're going to find yourself sitting down and then Mr. Sullivan –

MR. ACETO:  You can do what you gotta do –

THE COURT:  Don't argue with me, Mr. Aceto.

MR. ACETO:  You can do what you gotta do.  I've got a right to defend –

THE COURT:  I'm doing what I've got to do –

MR. ACETO:  Well, do what you gotta do.

THE COURT:  Now, I'm going to have you restrained if you don't –

MR. ACETO:  Do what you gotta do.

THE COURT:   – knock it off, and Mr. Sullivan is going to take over –

MR. ACETO:  You can do what you do –

THE COURT:  You abide by my rulings or –

MR. ACETO:  You didn't let Springer (sic) testify, you're not letting her testify, you're not letting any –

THE COURT:  I am letting her testify –

MR. ACETO:  Do what you gotta do.

THE COURT:  Get him out of here, right now.

At that point, Aceto shouted profanities at the court and the witness. The record also reflects that he threw a file at the witness as he walked past her while leaving the courtroom.

¶19 Aceto argues that, although courts should not have to tolerate an unruly defendant, courts must exercise care to ensure that fundamental Constitutional rights are adequately balanced with the court's need to conduct an orderly trial. He claims that, pursuant to the Montana Statute and U.S. Supreme Court precedent, the District Court should have warned him that his behavior could result in expulsion *before* it removed him from the courtroom. He further claims that the District Court should have given him the opportunity to redeem himself and return to his trial upon his assurances of proper behavior. Aceto points out that, although he apologized to the District Court for his behavior, he was not given the opportunity to return to his trial, but was offered only a closed-circuit television instead.

¶20 Aceto maintains that a closed-circuit television system is not equivalent to being physically present in the courtroom. He points out that he was unable to pass information to his attorney as testimony unfolded and he could not hear or participate in any of the sidebar conferences. He claims the closed-circuit television system deprived him of having any meaningful attorney-client communications during the trial after he was banished from the courtroom.

¶21 Relying on *Illinois v. Allen* (1970), 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353, Aceto argues that the Sixth Amendment to the United States Constitution guarantees a defendant the right to be present at all criminal proceedings. He directs our attention to *State v. Tapson*, 2001 MT 292, 307 Mont. 428, 41 P.3d 305, in which we embraced the rationale

8

of *Allen*, and noted that the Montana Constitution expressly guarantees a criminal defendant's "right to appear and defend in person and by counsel. . . ." Art. II, Sec. 24, Mont. Const. *quoted in Tapson, ¶ 15.* Thus, Aceto claims, his rights under both the U.S. and Montana Constitutions were infringed upon when he was removed from the courtroom and the trial continued in his absence.

¶22 The State counters that Aceto's outburst in the courtroom included yelling profanities and throwing files at the victim and the bench, and further alleges that Aceto's behavior was intentionally calculated to ensure a mistrial. It argues that Aceto thus should not be allowed to benefit from a situation which was of his own making. The State argues that this Court should not address Aceto's argument that *Allen* applies because Aceto did not mention the *Allen* decision prior to this appeal, and points out that it is unfair to hold the District Court in error for failure to consider an argument which was not presented to it. The State further claims that Aceto never raised an objection to being removed from the courtroom, but merely stated that if he could not represent himself, he would prefer to return to his cell and not participate via the closed-circuit television system, and thus his case presents facts distinguishable from those in *Allen*. The State further claims that Aceto was not removed from the courtroom but voluntarily and without coercion absented himself. Finally, while conceding that *Allen* requires that a defendant be allowed back into the courtroom once he agrees to conduct himself appropriately, the State claims that this opportunity was presented to Aceto several times, but Aceto repeatedly declined to return to the courtroom.

9

¶23 Both Aceto and the State further rely on § 46-16-122(3), MCA, but disagree as to which subpart applies. The statute reads:

> After the trial of a felony offense has commenced in the defendant's presence, the absence of the defendant during the trial may not prevent the trial from continuing up to and including the return of a verdict if the defendant: (a) has been removed from the courtroom for disruptive behavior after receiving a warning that removal will result if the defendant persists in conduct that is so disruptive that the trial cannot be carried on with the defendant in the courtroom; or (b) is voluntarily absent and the offense is not one that is punishable by death.

Aceto maintains that (a) applies and that he did not receive the warning it requires before he was permanently removed from his trial. The State argues that (b) applies because Aceto voluntarily absented himself from the proceeding.

¶24 A crucial part of this appeal turns on whether Aceto voluntarily absented himself, as the State claims, or whether Aceto was removed without warning and subsequently denied the opportunity to return in spite of his apology, as Aceto claims. Thus, we must first determine whether Aceto voluntarily absented himself from his trial.

¶25 Since the right to appear and defend oneself in person is found within Montana's Declaration of Rights, it is a fundamental right. A right is "fundamental" under Montana's Constitution if it is either found in the Declaration of Rights or is a right "without which other constitutionally guaranteed rights would have little meaning." *State v. Bird*, 2002 MT 2, ¶ 25, 308 Mont. 75, ¶ 25, 43 P.3d 266, ¶ 25 (quoting *Butte Community Union v. Lewis* (1986), 219 Mont. 426, 430, 712 P.2d 1309, 1311). Before a defendant can waive a fundamental right, such waiver must be informed and intelligent. *Bird*, ¶ 36 (citation

10

omitted).  Waiver is defined as the voluntary abandonment of a known right, and this Court will not engage in presumptions of waiver; any waiver of one's Constitutional rights must be made specifically, voluntarily, and knowingly.  *Bird*, ¶ 35 (citations omitted).

¶26    In its Brief, the State asserts, with the following transcript references, "The trial court informed him several times about his constitutional right to be present and offered him several opportunities to return, but Aceto declined each time. (Tr. at 583, 584, 622.)"  The State further claims, "Had Aceto accepted the court's invitation to return, he would have been able to participate more fully with his counsel.  Aceto was given his opportunity to make an informed decision as to whether to return to the courtroom.  Aceto declined repeatedly.  (Tr. at 583:24, 584:17, 586:6, 623:12, 652:14-17.)"

¶27    Aceto replies that the State mischaracterizes the record, noting, "[T]he state's argument that Aceto was provided with an opportunity to return to court and participate is a complete misstatement of the record.  Although Aceto did decline to participate through the video system, at no time did Aceto waive his right to return to the courtroom."

¶28    Our review of the record compels us to agree with Aceto.  The State's assertions that Aceto was given the opportunity to return to the courtroom are simply not borne out by the record.  Although the State liberally cites to the transcript, the text to which it cites does not support its assertions.

¶29    For example, on pages 583-584 of the transcript--which the State cites as the point in the record where Aceto is informed of his constitutional rights and given an opportunity to return to the courtroom--the transcript states,

11

THE COURT: . . . Mr. Aceto, we are scheduled to begin this morning, and we have made arrangements for you to testify. You indicated – or Mr. Sullivan indicated yesterday that you expressed to him your desire to testify, and we set up a system whereby you can testify and it would be projected onto the screen here for the jury.

And I'm advised now that you have indicated to Mr. Sullivan that you do not wish to further participate, even through this system that we have set up.

MR. ACETO: Yes, sir, not through any system.

THE COURT: You don't want to participate at all in any manner?

MR. ACETO: No, sir.

THE COURT: You understand you have a constitutional right to confront and cross-examine witnesses through your attorney and to be present and observe all of the proceedings via this internet system we have established, and you're saying you don't want to do that any longer?

MR. ACETO: That's correct.

Clearly, the District Court offered Aceto the use of a closed-circuit television system; it did not offer him the opportunity to return to the courtroom.

¶30 On page 622 of the transcript--another reference supplied by the State--the District Court asks, "[Y]ou did not – do not want to further participate by way of the electronic closed-circuit system that we have provided, nor do you wish to testify?" Contrary to the State's assertion, this was no declined "invitation to return" to the courtroom. It was an invitation to watch the proceedings and testify from a remote closed-circuit location, outside the presence of the court, the jury, and his lawyer. Similarly, the State's other referenced citations--to pages 623 and 652--do not contain either an invitation to return to the courtroom or its decline.

12

¶31    Unfortunately, the State's obfuscation of the record is not limited to the above representations. The State, noting that Aceto yelled profanities and threw files at Holmquist and the bench, states in its Brief to this Court that these actions "*preceded* the district judge's decision to have Aceto removed from the courtroom." (Emphasis added.) As the record clearly shows, however, Aceto's use of profanity and his throwing of files and paperwork occurred *after* the District Court ordered his removal and were, in fact in direct response to the court saying, "Get [Aceto] out of here, right now." *See ¶ 18*. Given the State's characterization, one would believe that Aceto was removed for yelling profanities and throwing files, when in fact, he was removed for interrupting the court and repeating "Do what you gotta do." While Aceto's response to the court's instructions was inappropriate and argumentative, it did not become obscene or menacing until *after* the District Court ordered him removed from the courtroom.

¶32    The State's argument that Aceto "was acting this way in order to secure a mistrial" is likewise unsupported in the record. Further, the State's assertion, "It would have been fruitless for the court to continuously return Aceto to the court," is disingenuous at best, as it presupposes that the District Court had, indeed, made attempts to return Aceto to the courtroom.

¶33    Although the State may wish to equate the closed-circuit television system with actual courtroom presence, it has failed to address Aceto's argument that the closed-circuit television system did not satisfy his Constitutional right to be present at his trial. The State in fact denies any need to address the issue, claiming that its determination of the

13

applicability of § 46-16-122(3)(b), MCA, is dispositive. We conclude, however, that § 46-16-122(3)(b), MCA, is not dispositive. In fact, given the record, the provision is not even applicable. A straightforward review of the record establishes that Aceto made an effort to be re-admitted to the courtroom, but his request was denied. He was never invited to return, despite his apology. Thus, Aceto did not absent himself from the courtroom, as the State maintains, "voluntarily," as that term is used in § 46-16-122(3)(b), MCA. We therefore address Aceto's argument that the closed-circuit television system did not satisfy his Constitutional right to be present at trial.

¶34    *Allen* notes that: "[O]ne of the defendant's primary advantages of being present at the trial [is] his ability to communicate with his counsel. . . ." 397 U.S. at 344, 90 S.Ct. at 1061, 25 L.Ed.2d at 359. Aceto expressed his frustration during an appearance in the courtroom outside the presence of the jury, in which the District Court questioned him about his unwillingness to participate in his trial via the closed-circuit television system:

> Well, Your Honor, I don't feel as I had ample opportunity to cross-examine or to assist in it before – I was brought in the room, before I know it Ms. Holmquist is gone. I never had a chance to speak to Mr. Sullivan in between that period. The forensic guy was up and gone. And so I just figure in a peaceful, nice way, I just don't want to participate, I want to go back to my cell. That is all I have to say.

The argument can be made that one's Constitutional right to be present during the critical phases of one's trial can be waived by a defendant through conduct inconsistent with the exercise of the right. Indeed, this is what § 46-16-122(3)(a), MCA, upon which Aceto relies, appears to contemplate. That section permits a trial to continue in a defendant's absence ".

14

. . if the defendant . . . has been removed from the courtroom for disruptive behavior after receiving a warning that removal will result if the defendant persists in conduct that is so disruptive that the trial cannot be carried on with the defendant in the courtroom. . . ." Aceto claims that he was improperly removed from the courtroom because he was not first warned that his behavior could result in his removal from the courtroom, as the statute explicitly requires. See the colloquy set forth at ¶ 18.

¶35 While it is difficult to discern nuances from a cold record, it appears that, from the beginning of the District Court's instructions until his removal from the courtroom, Aceto continuously interrupted the District Court and the situation in the courtroom rapidly deteriorated. In *Allen*, the U.S. Supreme Court noted,

> We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations.

397 U.S. at 343, 90 S.Ct. at 1061, 25 L.Ed.2d at 359.

¶36 The above *Allen* proviso notwithstanding, § 46-16-122(3)(a), MCA, clearly contemplates the issuance of a warning that ejection will occur if misbehavior continues be given *before* the defendant is removed from the courtroom. Such a warning was not given here. On the other hand, it is arguable that Aceto's repeated interruptions made it virtually impossible for the District Court judge to get a word in edge-wise.

15

¶37   Aceto, however, argues that his fundamental rights were violated not only because he was not warned prior to his removal, but also because he was not allowed to return to the courtroom after he apologized to the District Court.  He relies again on *Allen*:

> [W]e explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.  *Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.*

397 U.S. at 343, 90 S.Ct. at 1060-61, 25 L.Ed.2d at 359.  (Emphasis added.)

¶38   Aceto argues that the District Court never gave him an opportunity to return to the courtroom although he apologized for his inappropriate behavior.  Aceto claims that, once the closed-circuit television system was in place, the District Court concluded that it was an adequate means by which Aceto could participate in his trial, and thus never considered allowing Aceto to return to the courtroom.  Aceto argues that the District Court confused his right to represent himself with his right to be present in the courtroom, and that these are two discrete rights which are not inextricably intertwined.  Aceto maintains that the District Court could have ordered Sullivan to represent Aceto without also permanently barring Aceto from the courtroom.  He points again to *Allen* and additionally to *Badger v. Cardwell* (9th Cir., 1978), 587 F.2d 968.

¶39   Like Aceto, the defendant in *Allen* refused court-appointed counsel and requested that he be allowed to represent himself.  *Allen*, 397 U.S. at 339, 90 S.Ct. at 1059, 25 L.Ed.2d at

16

357. Allen, like Aceto, was given permission to do so, but the judge ordered the court-appointed attorney to remain on the case as standby counsel. *Allen*, 397 U.S. at 339, 90 S.Ct. at 1059, 25 L.Ed.2d at 357. During his trial, Allen, like Aceto, began to argue with the trial judge after the judge ordered that he limit his questions to those which were relevant. *Allen*, 397 U.S. at 339, 90 S.Ct. at 1059, 25 L.Ed.2d at 357. Allen then threatened the judge with physical harm, tore up a file, and threw the paper on the floor. *Allen*, 397 U.S. at 340, 90 S.Ct. at 1059, 25 L.Ed.2d at 357. The judge warned Allen that he would be removed from the courtroom if he had another outburst. *Allen*, 397 U.S. at 340, 90 S.Ct. at 1059, 25 L.Ed.2d at 357. Allen proceeded to verbally abuse the court, and the trial judge ordered him removed from the courtroom and continued the proceeding in Allen's absence. *Allen*, 397 U.S. at 340, 90 S.Ct. at 1059, 25 L.Ed.2d at 357.

¶40     Like Aceto, Allen was brought back into the courtroom while the jury was in recess. *Allen*, 397 U.S. at 340, 90 S.Ct. at 1059, 25 L.Ed.2d at 357. Unlike Aceto, however, the *Allen* judge instructed Allen that he would be permitted back into the courtroom provided that he conduct himself properly. *Allen*, 397 U.S. at 340, 90 S.Ct. at 1059, 25 L.Ed.2d at 357. His standby counsel then apparently took over his defense. *Allen*, 397 U.S. at 340, 90 S.Ct. at 1059, 25 L.Ed.2d at 357. Shortly after trial resumed in the presence of the jury, Allen disrupted the proceeding by stating his intention to forestall the trial by talking over the proceedings. *Allen*, 397 U.S. at 341, 90 S.Ct. at 1059, 25 L.Ed.2d at 357. He was once again removed from the courtroom and kept out of the trial except for brief appearances for purposes of identification; during one of those appearances he was verbally abusive to the

court. *Allen*, 397 U.S. at 341, 90 S.Ct. at 1059, 25 L.Ed.2d at 357. At the close of the prosecution's case in chief, Allen was informed that he could return to the courtroom if he agreed to conduct himself appropriately. *Allen*, 397 U.S. at 341, 90 S.Ct. at 1059, 25 L.Ed.2d at 358. Allen agreed, and he was permitted to remain in the courtroom for the remainder of his trial, although his defense was conducted by his appointed counsel. *Allen*, 397 U.S. at 341, 90 S.Ct. at 1059-60, 25 L.Ed.2d at 358.

¶41 The Court of Appeals reversed Allen's conviction, holding that a defendant's Sixth Amendment right to be present was absolute, and that a defendant could not lose that right regardless of his conduct in the courtroom. The U.S. Supreme Court disagreed, concluding, subject to its holding noted at ¶ 37, that a defendant could lose his right to be present through consent or unrepentant misconduct. *Allen*, 397 U.S. at 342, 90 S.Ct. at 1060, 25 L.Ed.2d at 358.

¶42 Likewise, in *Badger*, the defendant initially represented himself at trial with an appointed standby counsel. *Badger*, 587 F.2d at 970. Badger (then known as Delvecchio), was disruptive at a pre-trial proceeding and was warned by the judge that unruly behavior would cause him to forfeit his right to represent himself at trial, and that he could also lose his right to stay in the courtroom. *Badger*, 587 F.2d at 971-72. Although these warnings were repeated at the start of the trial, Badger/Delvecchio continually disrupted the jury selection process, and failed to modify his behavior after the judge issued him an extended warning about the possible consequences of his inappropriate behavior. Badger persisted in disrupting the proceedings periodically throughout the first day of the trial during the course

of his self-representation. *Badger*, 587 F.2d at 972. Badger was later expelled from the courtroom, but subsequently allowed to return and continue his self-representation. *Badger*, 587 F.2d at 973. When Badger was expelled a second time, his standby counsel completed the examination of that particular witness, after which Badger was returned to the courtroom and allowed to continue representing himself. *Badger*, 587 F.2d at 975. During the course of his trial Badger was expelled from and subsequently returned to the courtroom three times, and was ultimately barred from the remainder of his trial upon his fourth expulsion. *Badger*, 587 F.2d at 976.

¶43 On appeal, the Ninth Circuit reversed Badger's conviction, observing that most of Badger's courtroom difficulties appeared to stem from his attempts to represent himself, noting,

> [W]e are looking at an inartful and inept examiner, occasionally irrelevant, often repetitious, and – most serious – seemingly incapable of letting others finish speaking when what they said went against him.
>
> . . .
>
> [A]ppellant's behavior was exhibited as he was playing the attorney's role. In light of all the evidence, including both the limited nature of his misconduct and the evidence as to his intent, it is impossible to tell if the arguing and the interruptions would have persisted, had that role been withdrawn and assigned to another person.

*Badger*, 587 F.2d at 974-75. The Ninth Circuit emphasized the danger in using a defendant's misbehavior during self-representation as a measuring stick for whether or not he could remain seated in the courtroom without disrupting the proceedings. *Badger*, 587 F.2d at 976, noting, "A measure of unorthodoxy, confusion, and delay is to be expected in any *pro se*

case." *Badger*, 587 F.2d at 978, citing *U.S. v. Dougherty* (1972), 154 U.S.App.D.C. 76, 87, 473 F.2d 1113, 1124.

¶44 Like Badger, Aceto was simultaneously barred from representing himself and from being present in the courtroom. Aceto argues that the District Court could well have ordered Sullivan to take over his representation, while still allowing Aceto to remain present in the courtroom. The Ninth Circuit explained in *Badger*:

> [T]he court identified the defendant's right to represent himself with the defendant's right to be present. That identification is easy to make in the heat of trial. Both rights arise from assurances of the Sixth Amendment. Both rights are exercised when an accused stands *in propria persona*. Both rights may be curtailed on behalf of the same institutional interest. And, as a factual matter, both rights are usually lost by the same or succeeding acts. . . .

> [T]he right of self-representation must be claimed to be granted, while the right to be present is extended as a matter of course. . . .

> . . .

> It is reasonable to suppose that there are cases in which a defendant becomes so aroused in arguing and questioning, so frustrated by an inevitable succession of defeats on matters he little understands, so angered at his inability to elicit favorable testimony and to discredit damaging testimony, that in representing himself he loses self-control and seriously disrupts his trial. Yet, the same accused may be capable of listening and even assisting while another person, more versed in the substance and procedure of law, conducts his defense. Appellant may have been such a person. On this record we do not know; neither could the trial judge have known.

*Badger*, 587 F.2d at 978-79. In Aceto's situation, the District Court likewise intertwined these two discrete fundamental rights. Aceto conducted himself appropriately up until his cross-examination of Holmquist. The District Court then simultaneously removed Aceto both from his self-representation and from his seat in the courtroom, reasoning that Aceto

was unable to conduct himself in an appropriate manner. However, there is nothing in the record to suggest that Aceto could not have successfully exercised his right to remain in the courtroom while Sullivan conducted his defense; indeed, Aceto had already done so during *voir dire*.

¶45 We must, however, address the State's contention that Aceto did not object to his exclusion from the courtroom with enough specificity to preserve this issue for appeal. While Aceto concedes that his Motion for a New Trial did not address this issue, he claims that this Motion cannot be considered a waiver of his right to challenge the constitutionality of his exclusion from his trial. Aceto points to this Court's decision in *Bird*, ¶ 35, in which we held that defense counsel could not waive a defendant's right to be present during individual *voir dire* of prospective jurors by merely failing to object. We concluded that a trial court must explain to the defendant, on the record, his constitutional right to be present at all critical stages of the trial and that any waiver by the defendant had to be obtained by an on-the-record, personal waiver in which the defendant acknowledges that he waives such right voluntarily, intelligently, and knowingly. *Bird*, ¶ 38.

¶46 In *Bird*, we noted that the defendant had not been given the opportunity by the court to participate in the individual *voir dire* process and thus was not afforded an opportunity to waive that right. *Bird*, ¶ 37. We explained in *Bird* that the trial court's pronouncements would have given Bird the impression that he did not have a right to be physically present. *Bird*, ¶ 42. In the situation at hand, once he was ejected, Aceto was not accorded the right to be physically present as an option which he could then waive. While he knowingly

21

waived the right to watch the trial on the closed-circuit television system[1], we will not presume a waiver of his fundamental right to appear in person. In fact, Aceto's frustration at being excluded from the proceedings is evidenced by his comments to the District Court, set forth at ¶ 34. Just as Bird was not given the opportunity to participate in the *voir dire* process, and thus could not be said to have waived that right, Aceto was not given the opportunity to return to the courtroom, and thus cannot be said to have waived his right to do so.

¶47 Simply stated, when Aceto apologized the following morning, he should have been given the opportunity to return to the courtroom. *Allen*, 397 U.S. at 343, 90 S.Ct. at 1060-61, 25 L.Ed.2d at 359. Instead, on the morning of January 9 when Aceto apologized to the District Court, the court replied, "I have determined that the trial will proceed without your presence." The court went on to explain that it perceived two solutions--Aceto's presence in the courtroom "restrained," or his absence from the courtroom with "the availability of closed-circuit television to allow [Aceto] to observe the proceedings." By its explanation the District Court tacitly acknowledged that the closed-circuit television system would allow Aceto the ability merely to observe--not actively participate in--his trial, and that the closed-circuit television system was not the equivalent of presence in the courtroom itself. Likewise, it is clear that the District Court--like the trial court in Badger--did not differentiate between Aceto's behavior as he attempted to conduct his own defense and his behavior as

---

[1] The record indicates that--Aceto's protests notwithstanding--Aceto continued to observe most, if not all, of his trial via the closed-circuit television system.

22

a defendant represented by counsel. As *Badger* explains, one cannot extrapolate the latter from the former without further observation. *Badger*, 587 F.2d at 979.

¶48 Thus, we conclude the District Court violated Aceto's fundamental Constitutional rights under the Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution, as well as the letter of § 46-16-122(3), MCA, when without warning it excluded him from the courtroom for the remainder of his trial, and refused to allow his return.

## ISSUE TWO

¶49 2. Did the District Court err when it denied a motion for a mistrial sought by Aceto's standby counsel when the District Court ordered him to take over Aceto's representation mid-trial after Aceto's removal from the courtroom prevented Aceto from continuing *pro se*?

¶50 Because Issue One is dispositive, we decline to reach Issue Two.

## CONCLUSION

¶51 For the foregoing reasons, we reverse Aceto's conviction and remand for retrial.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JIM REGNIER

23

Justice Jim Rice specially concurring.

¶52    I concur with the Court's holding herein.

¶53    The Court concludes that Aceto's constitutional trial rights were violated "when without warning it excluded him from the courtroom for the remainder of his trial, and refused to allow his return." *See* ¶ 48.

¶54    I would not reverse based upon the District Court's failure to warn Aceto prior to removing him from the courtroom.  As the District Court was attempting to warn Aceto ("Now, I'm going to have you restrained if you don't–  . . . . You abide by my rulings or–"), Aceto went out of control, continuously interrupted the judge, threw things at a witness and presented a safety issue to those in the courtroom.  In such cases, removal is appropriate, whether or not the judge is able to utter the typically appropriate warning during the chaos:

> Although it would have been preferable for the court to explain to Norde the potential ramifications of his removal, we cannot say that Norde's removal was improper. We have held that "*even absent a warning*, a defendant may be found to have forfeited certain trial-related constitutional rights based on certain types of misconduct." *Gilchrist v. O'Keefe*, 260 F.3d 87, 97 (2d Cir. 2001).

*Norde v. Keane* (2nd Cir. 2002), 294 F.3d 401, 413 (emphasis added).   The United States Supreme Court in *Illinois v. Allen* recognized this ("trial judges confronted with disruptive . . . defendants must be given sufficient discretion to meet the circumstances of each case" *Allen*, 397 U.S. at 343, 90 S.Ct. at 1061, 25 L.Ed.2d at 359), as did the concurring and dissenting justices therein ("Due process does not require the presence of the defendant if his presence means that there will be no orderly process at all." *Allen*, 397 U.S. at 350, 90

24

S.Ct. at 1064, 25 L.Ed.2d at 363 (Brennan, J., concurring); "The [Constitution] has room for tolerance, patience, and restraint, but not for sabotage and violence." *Allen*, 397 U.S. at 356, 90 S.Ct. at 1067, 25 L.Ed.2d at 366 (Douglas, J., dissenting)).

¶55 However, I agree that the law requires the trial court to permit a removed defendant to reclaim his right to be present upon his assurance that he will conduct himself appropriately, and that the post-removal actions of the District Court here fell short. In *Norde*, the Court, although approving the defendant's removal, nonetheless reversed the conviction due to the trial court's inadequate post-removal efforts to allow the defendant's continued participation in the trial. *Norde*, 294 F.2d at 414-15. Thus, I must concur in the Court's holding.

/S/ JIM RICE