No. 04-137

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 160

_____

STATE OF MONTANA,

Plaintiff and Respondent,

v.

ERROL MANN,

Defendant and Appellant.

_____

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. DC 2003-104(C)
The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender Office, Helena, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Jim Wheelis, Assistant Attorney
General, Helena, Montana

Brant Light, Cascade County Attorney; Susan L. Weber, Deputy County
Attorney, Great Falls, Montana

_____

Submitted on Briefs:  December 21, 2005

Decided:  July 13, 2006

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     A jury convicted Errol Mann (Mann) of burglary and two counts of misdemeanor assault following a two-day trial in the Eighth Judicial District Court, Cascade County. He asserts on appeal that the District Court violated his fundamental constitutional right to be present and appear at all criminal proceedings.  Mann also alleges ineffective assistance of counsel based on the jury instructions his appointed counsel, John Keith (Keith) offered.

¶2     We rephrase the issues on appeal as follows:

¶3     1.  Whether the District Court violated Mann's constitutional right to appear at all criminal proceedings against him when the court excluded him from a pre-trial meeting that addressed Mann's allegations of ineffective assistance of counsel, Mann's request to represent himself, and Keith's perceptions of his client.

¶4     2.  Whether Keith's decision to request jury instructions for the lesser included offenses charged deprived Mann of the right to effective assistance of counsel.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶5     Police arrested Mann following an incident at a private residence in Great Falls. Mann remained in a house where he had formerly lived, despite being asked to leave repeatedly.  The two female residents told police that Mann threatened them with a small caliber pistol while he remained in their home.  The State charged Mann with aggravated burglary and two counts of assault with a weapon.  Mann entered a plea of not guilty, and the case proceeded to trial.

2

¶6 Cascade County Public Defender Megan Lulf (Lulf) first represented Mann but later cited a conflict and withdrew. The court substituted Keith to represent Mann. Mann informed the court immediately prior to the trial's outset, however, that he was dissatisfied with Keith's performance. The court inquired further and determined that no grounds to substitute counsel existed. Mann then announced that he would rather represent himself than proceed with Keith as his attorney. The court informed Mann of the risks he would assume should he choose to represent himself. Mann insisted that he was determined to proceed without counsel. The court then excused Mann from the meeting, and continued the discussion concerning Mann's representation with Keith and the State on the record, addressing whether the District Court would permit Mann to proceed *pro se*.

¶7 Although the court did not ask Keith to respond to Mann's complaints, Keith proceeded to expound upon Mann's attitude and his own performance as counsel. He informed the court that Mann would never listen to him and stated twice that Mann had called Keith a liar. Keith further offered that Lulf had withdrawn "because she was threatened by Mr. Mann. She was genuinely frightened of him." Keith also described the deteriorating relationship between him and his client, and asserted on several occasions that he believed Mann would disrupt the proceedings if the court prevented Mann from representing himself. At the conclusion of this somewhat lengthy discussion, the bailiff returned Mann to the courtroom and, unaware of what transpired outside his presence, Mann changed his mind and elected to proceed with Keith as counsel. The prospective jurors entered the room and voir dire began.

¶8　　Keith offered instructions on the lesser included offenses of burglary and misdemeanor assault when the parties settled jury instructions at the end of the first day of trial.  The jury returned a guilty verdict the next day on these two charges.  Judge Neill sentenced Mann as a persistent felony offender to thirty years at the Montana State Prison for burglary and two six-month sentences for the misdemeanor assault charges.  The District Court ordered the sentences to run concurrently.

¶9　　Mann appeals his sentence and conviction, asserting that he was wrongly excluded from a critical stage of the proceedings against him, and that he was deprived of his right to effective assistance of counsel.

## STANDARD OF REVIEW

¶10　　A district court's determination of whether a criminal defendant's right to be present at the critical stages of his or her trial is a question of constitutional law.  *State v. Aceto*, 2004 MT 247, ¶ 15, 323 Mont. 24, ¶ 15, 100 P.3d 629, ¶ 15.  Our review of constitutional law questions is plenary.  *Aceto*, ¶ 15.

## ISSUE ONE

¶11　　Whether the District Court violated Mann's constitutional right to appear at all criminal proceedings against him when the court excluded him from a pre-trial meeting that addressed Mann's allegations of ineffective assistance of counsel, Mann's request to represent himself, and Keith's perceptions of his client.

¶12　　The Confrontation Clause of the Sixth Amendment provides a criminal defendant the right to be present at all criminal proceedings against him.  *Illinois v. Allen* (1970), 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353, 356.  The Montana Constitution

4

includes express language aimed at protecting this right, providing that, "[i]n all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel. . . ." Article II, Sec. 24, Mont. Const. We have established that the right to appear and defend is a fundamental right which may only be waived through an informed, intelligent, and recorded waiver. *State v. Tapson*, 2001 MT 292, ¶¶ 15, 28, 307 Mont. 428, ¶¶ 15, 28, 41 P.3d 305, ¶¶ 15, 28; *State v. Kennedy*, 2004 MT 53, ¶ 29, 320 Mont. 161, ¶ 29, 85 P.3d 1279, ¶ 29.

¶13 The 1889 Montana Constitution contained language identical to the right to appear and defend provision found today, and Montana case law has historically reflected the importance this state places on such rights. In one of its first opportunities to address the right to appear and defend clause, found at that time in Article III, Section 16, this Court stated that "the defendant must be present throughout the *entire* trial." *State v. Reed* (1922), 65 Mont. 51, 56, 210 P. 756, 757 (emphasis added). We added further that the defendant has a legal right to be present "when the jury are hearing his case, and at all times during the proceeding of the trial, *when anything is done which in any manner affects his right. . . ." Reed*, 65 Mont. at 58, 210 P. at 758 (emphasis added). We then stated over forty years later that a defendant's Article II, Section 24 rights are violated if he "is prevented from attending other proceedings where his presence is essential to a fair and just determination of a substantial issue." *State v. Schenk* (1968), 151 Mont. 493, 500, 444 P.2d 861, 864.

¶14 In recent years, we have been called upon to determine whether various situations in which the accused has been excluded from trial proceedings have resulted in a

5

violation of a defendant's constitutional rights. For example, we concluded that the district court violated the defendant's rights when it excluded the defendant and his counsel from an in-chambers voir dire. *State v. Bird*, 2001 MT 2, ¶ 40, 308 Mont. 75, ¶ 40, 43 P.3d 266, ¶ 40. We also concluded a violation occurred when the trial judge entered the jury room during deliberations, *Tapson*, ¶ 33, and when a judge ordered the defendant removed from the courtroom for the duration of trial without warning, following courtroom outbursts by the defendant. *Aceto*, ¶ 48.

¶15 We have not always concluded, however, that an alleged violation of this constitutional right warrants automatic reversal. Rather, we consider the effect the violation has on the defendant to determine whether the defendant suffered any conceivable prejudice. For example, in *Kennedy*, we concluded that the district court's act of excluding Kennedy from a private conversation the judge shared with a juror regarding the juror's violation of the court's order to not communicate with trial witnesses, violated Kennedy's right to be present at all critical stages of his trial. *Kennedy*, ¶ 27. We held nonetheless that the effect of Kennedy's exclusion did not prejudice him in any way, because any opportunity Kennedy missed to question the juror about his alleged misconduct was mooted when the district court removed the juror from the panel and further prevented the witness with whom the juror had contact from testifying at trial. *Kennedy*, ¶ 34.

¶16 On the other hand, we determined in *Bird* that the violation of Bird's constitutional right to be present warranted automatic reversal when the district court excluded him from an in-chambers voir dire. *Bird*, ¶ 40. We noted that the purpose of the voir dire was

6

to elicit the prospective juror's personal feelings and experiences regarding domestic violence. The effect of the constitutional violation deprived Bird of the opportunity to hear the juror explain her biases and thus prevented Bird "from knowing about her prejudices and from insisting that defense counsel strike her with a peremptory challenge." *Bird*, ¶ 28.

¶17 Here, by the time the District Court excluded Mann from the pre-trial meeting, it had already conducted the inquiry to determine whether Mann's allegations of ineffective assistance of counsel were substantial, *State v. Gallagher*, 1998 MT 70, ¶ 15, 288 Mont. 180, ¶ 15, 955 P.2d 1371, ¶ 15, and concluded that since Mann had failed to present "any concrete substantive complaint about counsel," there was no basis to substitute counsel. This left the District Court to determine the question of whether Mann should be allowed to proceed pro se or with Keith as counsel, and it was from this discussion that Mann was excluded. The Dissent properly points out that following Mann's exclusion, the District Court also addressed security matters and held a discussion regarding an evidentiary matter. Nonetheless, the conversation included discussions regarding the determination of whether Mann himself or Keith would provide representation in the imminent trial. As this important determination implicates a substantial issue in the scope of the criminal proceedings against him, we deem such exclusion a violation of Mann's constitutional right to be present and defend himself. We now turn to the effect of the exclusion to resolve whether this constitutional violation warrants reversal.

¶18 The right to effective assistance of counsel and the right to self-representation are two of the vital rights the constitution affords criminal defendants. The Sixth

7

Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee the right to effective assistance of counsel. *State v. Lamere*, 2005 MT 118, ¶ 7, 327 Mont. 115, ¶ 7, 112 P.3d 1005, ¶ 7. The same provisions provide a criminal defendant the right to proceed pro se. *Faretta v. California* (1975), 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562, 574; *State v. Woods* (1997), 283 Mont. 359, 372-73, 942 P.2d 88, 97. Mann, like any other criminal defendant, was entitled to knowingly and intelligently decide how to exercise these rights.

¶19 Here, unlike in *Kennedy*, Mann was not afforded a remedy following his exclusion from the pre-trial discussion that would have rendered the constitutional violation moot. *Kennedy*, ¶ 34. Rather, Mann was forced to make a decision regarding the substantial issue of whether to represent himself at trial or proceed with Keith as his representative without having the benefit of hearing all the pertinent information. The Dissent notes that the District Court did not make any statements "regarding Mann's self-representation" in Mann's absence. The crux of what Mann missed, however, was not the District Court's comments, but those of his own attorney, from whom this Court, the Professional Rules of Conduct, the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution demand a duty of loyalty. *State v. Jones* (1996), 278 Mont. 121, 125, 923 P.2d 560, 562-63; Rule 1.6, MRPC.

¶20 Mann's absence from the discussions among the court, the State, and Keith deprived him of the opportunity to hear his own attorney, with whom Mann had already expressed deep dissatisfaction, describe for both the court and the State his personal biases against Mann and his very negative perception of his own client. Mann was

unable to hear his lawyer accuse him of threatening another attorney, inform the court that Mann would never listen to him and had called him a liar, and deride Mann's choice of a specific witness Mann wanted to call in his defense. Keith spoke further of when "the relationship [between Mann and Keith] started to go downhill" and stated that "everything seemed to unravel." Lastly, Keith presented hearsay and speculated that Mann would misbehave and disrupt the proceedings if the court refused to allow Mann to proceed pro se. Mann's inability to hear this protracted discussion clearly rendered his subsequent decision to proceed with Keith rather than pro se – an unquestionably critical decision – both unintelligent and uninformed.

¶21 We conclude that the District Court violated Mann's constitutional right to appear at all critical stages of the proceedings against him when it excluded him from a pre-trial discussion at which Keith portrayed his client in a negative light, and whose purpose was to decide whether Mann would represent himself or proceed with Keith as counsel. This exclusion prevented Mann from exercising in a meaningful way the significant constitutional rights afforded him by the Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution—the rights to effective assistance of counsel or to choose to represent oneself at trial. *See* ¶ 18, above. We therefore reverse and remand for a new trial.

### ISSUE TWO

¶22 Whether Keith's decision to request jury instructions for the lesser included offenses charged deprived Mann of the right to effective assistance of counsel.

9

¶23 In light of our decision to reverse and remand on Issue One, we deem it unnecessary to address Issue Two.

¶24 Reversed.

/S/ PATRICIA COTTER

We Concur:

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ BRIAN MORRIS

Justice Jim Rice dissenting.

¶25 I do not believe reversal of the Defendant's conviction is warranted.

¶26 A reading of the transcript reveals another side to this story. There is no question that Mann was uncooperative and potentially dangerous to persons in the courtroom. Prior to Mann's arrival in court, the District Court was obliged to address security issues which had arisen as a result of Mann's behavior. Security officials expressed "serious" concerns and requested that the District Court require Mann to be restrained by leg irons and handcuffs, an issue which was resolved by the court approving leg irons only. Sheriff's deputies were asked to sit in the courtroom. These arrangements were made without Mann being present, for obvious security reasons.

¶27 When Mann arrived, he expressed his refusal to wear street clothes, wanting instead to appear in "detention center orange." He further asserted that he had not

received "full representation" from his lawyer, had not received a reasonable bond, was being "railroaded" and that the State was pressuring witnesses to testify against him:

> They had nine months, and I think they're coercing, threatening the victims to make a statement on me. They sit in there and they give her a pop when she's in the county jail and they give her a pop and wink at her and tell her that, you know, coerce, and then what happened? She then, what, you were scared? And then she finishes it. I think that's violation . . . .

¶28 In response to Mann's complaints, the District Court immediately took up the matter of defense counsel's representation and received testimony, concluding therefrom that counsel's communication and representation had been sufficient. At that point, Mann declared that he wanted to represent himself. Again delaying the start of the trial, the District Court patiently took up the issue of Mann's self-representation, attempting to advise him of the dangers of doing so and seeking to demonstrate that Mann was not qualified to try his own case, over Mann's protestations that "[I]t's all rigged anyway. So I am just going to go with faith. I think this whole thing is rigged." The District Court's task was not an easy one:

> THE COURT: In other words, what I am telling you is that it's not a good idea to try to represent yourself. Now, Mr. Keith will listen to anything you want to tell him during the course of the trial.

> THE DEFENDANT: He hasn't listened to this point. I mean – now he wants to listen?

> THE COURT: I've – we've been over this. What I am here to do, Mr. Mann, is give you a fair trial. And that's what I, that's –

> THE DEFENDANT: That ain't fair.

> THE COURT: And I'm trying to let that, make sure that happens.

11

. . . .

THE COURT: . . . So what we're trying to do, Mr. Mann, is going forward. I've explained to you we're going to have this trial. Now –

THE DEFENDANT: I want to go by myself.

THE COURT: So, you know, I don't want you to be in there –

THE DEFENDANT: I won't.

THE COURT: — making –

THE DEFENDANT: You won't hear one word. You guys go ahead and do your thing. I just don't want nobody there, I want to be there by myself.

THE COURT: You're going to have standby counsel at the very least.

THE DEFENDANT: I refuse. I have a constitutional right to represent myself.

THE COURT: Well, and we're getting to the point where that's probably what's going to happen. But we, I'm going to have standby counsel available to you. And you'll have these opportunities to question jurors, to cross-examine witnesses.

But I want you to focus on just doing those things that are procedurally proper as we go along. Do you understand that? In other words, I don't want you to hurt yourself by, a few minutes ago you said in here, okay, I admit that all this, you said all this shit happened, but I didn't have a gun.

THE DEFENDANT: I don't care. I don't care.

¶29 After this difficult session, Mann left, and the District Court stated, "I guess at this point I want to get the observations of counsel about where we are in this." The discussion that followed was essentially general observations, mostly about the continuing concern about the court's ability to conduct the trial in light of Mann's

12

security risks. The bailiff raised concerns about Mann's unpredictability, and the presence of the deputies was discussed. Questions concerning Mann's trying the case in leg irons, where defense counsel would sit, the extent of Mann's access to the courtroom and what to do if Mann got out of control were raised and discussed. Defense counsel observed that Mann "would do exactly what he did in here [earlier], is break in every time I tried to explain something . . . ." The discussion then turned to the handling of evidentiary matters on which there was no disagreement. Finally, comments were made regarding Mann's self-representation, but were not extensive, and the District Court made no statements in that regard.

¶30     Mann was properly excluded from the courtroom for purposes of discussing the security issues he presented to the conduct of the trial. "[T]rial judges confronted with disruptive . . . defendants must be given sufficient discretion to meet the circumstances of each case." *Illinois v. Allen* (1970), 397 U.S. 337, 343, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353, 359. The discussion of the other issues was general in nature, some of it a repeat of the discussion in Mann's presence. True, some comments were made about Mann in his absence by his counsel, but these were of little moment when compared to the substantial discussion about the security risks Mann's behavior presented. In that light, any prejudice suffered by Mann by his absence from this meeting was *de minimus*, and I would affirm his conviction pursuant to *State v. Kennedy*.


/S/ JIM RICE


13