DA 06-0134

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 444

STATE OF MONTANA,

Plaintiff and Appellee,

v.

WILLIAM JOHN MATT,

Defendant and Appellant.

FILED

DEC 3 0 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 2004-350
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Hooks & Wright, Helena, Montana

For Appellee:

Hon. Mike McGrath, Montana Attorney General, Pamela P. Collins,
Assistant Attorney General, Helena, Montana

Fred Van Valkenburg, Missoula County Attorney, Andrew Paul,
Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  June 6, 2007

Decided:  December 30, 2008

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 William John Matt appeals from his conviction of deliberate homicide in the Fourth Judicial District Court, Missoula County. We reverse and remand for a new trial.

## ISSUES

¶2 Matt raises three issues on appeal:

1. Did the District Court err in limiting Matt's cross-examination of one of the State's witnesses?

2. Did Matt's trial counsel provide constitutionally ineffective assistance of counsel?

3. Was Matt's constitutional right to be present at all critical stages of his trial violated and, if so, was the violation harmless error?

¶3 Because we conclude that Matt's conviction must be reversed under Issue 3, we do not address Issues 1 and 2. Moreover, since this case is being remanded for a new trial, we do not provide substantial details regarding the facts underlying the charged offense.

## BACKGROUND

¶4 The State of Montana filed an information, and subsequently an amended information, charging Matt with deliberate homicide, a felony, in violation of § 45-5-102(1)(b), MCA (commonly known as "felony murder"). As alleged in the State's probable-cause affidavit, the body of Steven Rodriguez was found the morning of June 22, 2004, submerged in an irrigation canal near the Clark Fork River in Missoula, Montana. The medical examiner determined that the cause of death was drowning and that Rodriguez had nonlethal injuries consistent with having been in a fight. Following

2

an investigation, the State developed the theory that Matt, Rodriguez, Andrew Greybull, and Kevin Oldhorn had been drinking together under the Madison Street Bridge and that Matt, Greybull, and Oldhorn had taken turns beating up Rodriguez, who was "too drunk to defend himself." Allegedly, Matt, Greybull, and Oldhorn threw Rodriguez in the canal several times, and Greybull and Oldhorn took turns holding Rodriguez's head underwater for ten to fifteen seconds at a time. They eventually left Rodriguez's body floating in the canal. According to the State, Greybull removed Rodriguez's boots during the course of these events and later sold them at a local pawnshop, and Matt then used the money obtained from selling the boots to purchase vodka.

¶5 The State charged that Matt, with the purpose to promote or facilitate the offense of robbery, aided, abetted, or attempted to aid Greybull and/or Oldhorn in the planning or commission of the robbery of Rodriguez, and that in the course of said robbery, Matt or other persons legally accountable for the robbery caused the death of Rodriguez. Matt pleaded not guilty to this offense, and the case proceeded to trial in April 2005.

¶6 At the close of the State's case-in-chief, the trial judge, the prosecutor, and defense counsel met in the judge's chambers. Matt was not present. At the outset, the judge inquired of defense counsel, "Do you have Mr. Matt coming?" to which defense counsel responded, "I don't mind if he's not here." A discussion took place off the record, and then, back on the record, defense counsel added, "I don't need my client here. This is legal. He doesn't get any of this anyway."

¶7 Four matters were addressed during the in-chambers conference. First, defense counsel renewed an objection to testimony by a police detective concerning Matt's

3

interview with authorities. She noted that the court had reserved ruling on this objection, and she argued that the detective's testimony was cumulative of the auditory recording played to the jury and that the prejudicial effect of the testimony outweighed any probative value it might have. The prosecutor responded that he had elicited the testimony in question for the purpose of clarifying certain inconsistencies in Matt's statements. The court overruled the objection.

¶8   Second, defense counsel requested permission to call Dave McCarthy, a probation officer, to testify about the reputation for truthfulness of Shaun Nimocks, one of the State's witnesses. The court ruled that McCarthy could testify about Nimocks's reputation for truthfulness but that McCarthy could not testify about any underlying offenses or underlying allegations concerning probation violations.

¶9   Third, defense counsel requested permission to present the testimony of a police officer who was in possession of a note which (according to counsel) Oldhorn had written to Matt while in jail and jail staff had intercepted. The prosecutor objected, arguing that the note constituted hearsay and that defense counsel could not lay a proper foundation for it. The court ruled that the note was inadmissible.

¶10   Fourth, defense counsel moved to dismiss the charge for insufficient evidence. She argued that the prosecutor had failed to prove the elements of the underlying felony of robbery beyond a reasonable doubt, as required to satisfy the felony-murder rule under § 45-5-102(1)(b), MCA. Moreover, she argued that the prosecutor had failed to establish a "causal connection" between the felonious act and Rodriguez's death. Lastly, she

4

argued that the accomplice testimony presented by the prosecution during its case was insufficient because it was uncorroborated. The court denied the motion.

¶11 The jury ultimately found Matt guilty of felony homicide, and the District Court sentenced him to 100 years in the Montana State Prison without the possibility of parole. Matt now appeals his conviction.

## STANDARD OF REVIEW

¶12 Whether a criminal defendant's right to be present at a critical stage of his trial has been violated is a question of constitutional law. *Price v. State*, 2007 MT 307, ¶ 10, 340 Mont. 109, ¶ 10, 172 P.3d 1236, ¶ 10; *see also State v. Mizenko*, 2006 MT 11, ¶ 8, 330 Mont. 299, ¶ 8, 127 P.3d 458, ¶ 8. This Court's review of a question of constitutional law is plenary. *State v. LaFreniere*, 2008 MT 99, ¶ 7, 342 Mont. 309, ¶ 7, 180 P.3d 1161, ¶ 7; *In re A.S.*, 2004 MT 62, ¶ 9, 320 Mont. 268, ¶ 9, 87 P.3d 408, ¶ 9.

## DISCUSSION

¶13 *Was Matt's constitutional right to be present at all critical stages of his trial violated and, if so, was the violation harmless error?*

¶14 Matt contends that his state and federal constitutional rights were violated because he was not included at the conference held at the close of the State's case in the trial judge's chambers. Specifically, Matt relies on his rights of confrontation and due process under the Sixth and Fourteenth Amendments to the United States Constitution and his rights to appear and defend in person and to meet the witnesses against him face to face under Article II, Section 24 of the Montana Constitution. Matt argues that the in-chambers conference was a "critical stage" of his trial and that he did not effectively

5

waive his right to be present at this conference. Matt further argues that the violation of his constitutional right to be present cannot be deemed harmless, and he therefore concludes that his conviction must be reversed.

¶15   In response, the State argues that the in-chambers conference was not a "critical stage" of Matt's trial because "[n]o witnesses were questioned" and "the issues discussed were purely legal." The State also contends that a violation of a defendant's right to be present at a critical stage of the trial is not necessarily a "structural" violation. Thus, the State asserts that we must affirm Matt's conviction.

### The Right to be Present

¶16   The federal constitutional right to be present at all criminal proceedings is one of the most basic rights contained in the Confrontation Clause of the Sixth Amendment to the United States Constitution. *State v. Tapson*, 2001 MT 292, ¶ 14, 307 Mont. 428, ¶ 14, 41 P.3d 305, ¶ 14 (citing *Illinois v. Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 1058 (1970)). Although rooted "to a large extent" in the Confrontation Clause, the right to be present is also protected by the Fourteenth Amendment's Due Process Clause "in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 1484 (1985) (per curiam). A defendant has "a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667 (1987) (internal quotation marks omitted). The right to be present stems in part from the fact that by his physical presence, the defendant can hear and see the

6

proceedings and can participate in the presentation and preservation of his rights. *Bustamante v. Eyman*, 456 F.2d 269, 274 (9th Cir. 1972); *State v. Kennedy*, 2004 MT 53, ¶ 16, 320 Mont. 161, ¶ 16, 85 P.3d 1279, ¶ 16. The right is also designed to safeguard the public's interest in a fair and orderly judicial system. *Bustamante*, 456 F.2d at 274-75; *accord Tapson*, ¶ 14. Thus, the right to personal presence at all critical stages of the trial is a "fundamental right[ ] of each criminal defendant." *Rushen v. Spain*, 464 U.S. 114, 117, 104 S. Ct. 453, 455 (1983) (per curiam).

¶17 Separate and independent of this federal right, "the right to appear and defend in person" is contained in the Declaration of Rights of Montana's 1972 Constitution. *See* Mont. Const. art. II, § 24. As such, it is a fundamental right. *Tapson*, ¶ 15. In *State v. Reed*, 65 Mont. 51, 210 P. 756 (1922), we considered identical language in Article III, Section 16 of Montana's 1889 Constitution and observed that a defendant "has the legal right to be present when the jury are hearing his case, and at all times during the proceeding of the trial, when anything is done which in any manner affects his right." *Reed*, 65 Mont. at 58, 210 P. at 758 (internal quotation marks omitted). The fundamental right to be present applies without exception to those stages of the proceedings that are deemed "critical." *State v. Roedel*, 2007 MT 291, ¶ 59, 339 Mont. 489, ¶ 59, 171 P.3d 694, ¶ 59. This Court has defined "critical stage" as "any step of the proceeding where there is potential for substantial prejudice to the defendant." *Ranta v. State*, 1998 MT 95, ¶ 17, 288 Mont. 391, ¶ 17, 958 P.2d 670, ¶ 17 (internal quotation marks omitted).

¶18 With these principles in mind, we conclude below that (1) the in-chambers conference was a critical stage of Matt's trial, (2) Matt did not waive his right to be

7

present at the conference, and (3) the violation of Matt's right to be present is not harmless error.

## Critical Stage

¶19   This Court has not directly addressed whether an in-chambers conference where evidentiary issues and a motion to dismiss for insufficient evidence are argued by counsel and ruled on by the trial judge constitutes a "critical stage" of the trial. We observe, however, that the District Court's consideration of Matt's motion to dismiss for insufficient evidence was clearly a step in the proceedings where there was "potential for substantial prejudice" to Matt. *Ranta*, ¶ 17. At that point, the charge of felony homicide could have been dismissed and Matt set free. The fact that his motion was denied and his trial on the charge accordingly resumed most certainly "affect[ed] his right." *Reed*, 65 Mont. at 58, 210 P. at 758. The denial of the motion established that, in the District Court's view, the State had presented sufficient evidence upon which a rational trier of fact could find the essential elements of felony homicide beyond a reasonable doubt. *See State v. Rosling*, 2008 MT 62, ¶ 35, 342 Mont. 1, ¶ 35, 180 P.3d 1102, ¶ 35. This, in turn, moved Matt one step closer to conviction and, ultimately, imprisonment.

¶20   Similarly, the District Court's consideration of and ruling on the evidentiary issues raised by defense counsel constituted a critical stage of Matt's trial. *See e.g. Talton v. Warden*, 370 A.2d 965, 967-68 (Conn. 1976); *People v. Thomas*, 208 N.W.2d 51, 56-57 (Mich. App. 1973); *People v. Tellier*, 648 N.Y.S.2d 659, 660 (N.Y. App. Div. 2d Dept. 1996); *People v. Casiano*, 743 N.Y.S.2d 405, 405-06 (N.Y. App. Div. 1st Dept. 2002); *State v. Addison*, 496 S.E.2d 412, 413-14 (N.C. App. 1998); *LaPointe v. State*, 166

8

S.W.3d 287, 296-98 (Tex. App. 3d Dist. 2005). The evidentiary issues raised and argued at the in-chambers conference included: (1) whether the District Court would sustain defense counsel's objection to testimony by a police detective concerning inconsistencies in Matt's statements to authorities; (2) whether defense counsel could call a probation officer in order to impeach witness Nimocks's credibility, and what the parameters of defense counsel's questioning of this witness would be; and (3) whether defense counsel could introduce into evidence the note allegedly written by Oldhorn to Matt while in jail. Each of these issues, regardless of the District Court's ultimate rulings, had the potential to prejudice Matt's defense substantially.

¶21 Finally, we do not agree with the State's suggestion that the in-chambers conference was not a critical stage of Matt's trial because the issues discussed were "purely legal." Even assuming, for the sake of argument, that Matt would not have fully grasped the legal aspects of the issues being discussed, there are other reasons why the conference constituted a critical stage of his trial. Perhaps most obvious is the fact that every criminal defendant in this state has the constitutional right to appear and defend "in person." Mont. Const. art. II, § 24. In this connection, Matt could have participated in the preservation of his rights at the conference. *See Kennedy*, ¶ 16 ("[B]y his or her physical presence, a defendant can hear and see the proceedings, and can participate in the preservation of his or her rights."). He could have observed whether his attorney was advocating for him zealously and professionally. He could have observed the demeanor of the trial judge and the prosecutor. He could have heard their arguments, statements, and rulings regarding the evidentiary issues and his motion to dismiss for insufficient

9

evidence. He could have provided information bearing on the matters being discussed. Based on his observations, he could have decided to change his plea in the hope of a more lenient sentence. His observations also could have informed his decision to pursue an ineffective assistance of counsel claim. Ultimately, it was Matt who bore the consequences of the District Court's rulings on the matters raised by defense counsel—matters which, as stated above, had the potential to prejudice Matt's defense substantially.

¶22 For these reasons, we hold that under Article II, Section 24, the in-chambers conference at which the District Court heard arguments on evidentiary issues and ruled on Matt's motion to dismiss for insufficient evidence constituted a critical stage of his trial, for which Matt had a constitutional right to be present.

**Waiver**

¶23 The State contends that even if the in-chambers conference was a critical stage of Matt's trial, defense counsel "validly waived her client's presence" when she told the trial judge on the record: "I don't need my client here. This is legal. He doesn't get any of this anyway." Matt, however, argues that any purported waiver of his right to be present was not valid. We agree with Matt.

¶24 "Waiver" is defined as "the voluntary abandonment of a known right." *State v. Bird*, 2001 (2002[1]) MT 2, ¶ 35, 308 Mont. 75, ¶ 35, 43 P.3d 266, ¶ 35 (emphasis and internal quotation marks omitted); *State v. McCarthy*, 2004 MT 312, ¶ 32, 324 Mont. 1,

_____

[1] *Bird* was decided January 15, 2002, and, thus, should have been given a 2002 designation. Due to a typographical error, however, it was published with a 2001 "MT" number.

10

¶ 32, 101 P.3d 288, ¶ 32. As noted, the right to appear and defend in person is a fundamental right. *Tapson*, ¶ 15. Before a defendant can waive a fundamental right, such waiver, to be recognized by the courts, must be informed and intelligent, for there can be no waiver by one who does not know his rights or what he is waiving. *McCarthy*, ¶ 32; *Bird*, ¶ 36. Thus, if a defendant chooses to waive his right to be present at a critical stage of the trial, the trial court must obtain an on-the-record personal waiver by the defendant acknowledging that the defendant voluntarily, intelligently, and knowingly waives that right. *McCarthy*, ¶ 32; *Bird*, ¶ 38; *see also Tapson*, ¶ 28; *Roedel*, ¶ 59; *State v. Aceto*, 2004 MT 247, ¶¶ 45-46, 323 Mont. 24, ¶¶ 45-46, 100 P.3d 629, ¶¶ 45-46. This Court will not engage in presumptions of waiver. *McCarthy*, ¶ 32; *Bird*, ¶ 35; *Tapson*, ¶ 25; *see also State v. Walker*, 2007 MT 34, ¶ 14, 336 Mont. 56, ¶ 14, 153 P.3d 614, ¶ 14 ("We refuse to presume that a defendant waived a constitutional right.").

¶25 Here, because the in-chambers conference constituted a critical stage of Matt's trial, any decision to waive his right to be present had to be voluntarily, intelligently, and knowingly made by Matt himself. *McCarthy*, ¶ 32; *Bird*, ¶ 38; *Aceto*, ¶¶ 45-46. There is nothing in the record, however, amounting to an on-the-record personal waiver by Matt of his right to appear in person at the conference. For that matter, nothing in the record establishes that Matt was fully apprised of this right. *Cf. Tapson*, ¶ 27 ("While Tapson's counsel professed to waive these rights, there is nothing in the record to indicate that Tapson himself was apprised of these rights, nor is there anything in the record indicating that he personally made a knowing, intelligent and voluntary waiver of these rights.").

11

¶26 In this regard, and contrary to the State's argument, defense counsel's remarks regarding Matt's absence are not sufficient to establish a valid waiver. Defense counsel's statements that "I don't mind if he's not here" and "I don't need my client here" do not suggest that Matt, himself, had made an informed and voluntary decision to waive his right. Rather, they suggest that defense counsel personally did not see the need for Matt's presence. Of course, that perspective misses the mark, since the right at issue here is not defense counsel's to waive if she does not "need" her client present. Rather, the right and the decision to waive it are personal to the defendant. *See State v. Martin*, 695 N.W.2d 578, 586 (Minn. 2005) ("While the defendant can waive his right to be present at a stage of trial, the decision to waive the right is not for counsel to make but a personal decision for defendant to make after consultation with counsel." (internal quotation marks omitted)), *abrogated on other grounds*, *State v. Moua Her*, 750 N.W.2d 258, 265 n. 5 (Minn. 2008); *see also Bradshaw v. State*, 806 A.2d 131, 137 (Del. 2002) ("The general rule is that the right to be present is a right that is personal to a defendant, and may not be waived by that defendant's counsel."); *People v. Lofton*, 740 N.E.2d 782, 797 (Ill. 2000) ("When the accused is not present in person, the error is not cured by the presence of his counsel, as his attorney has no power to waive his right to be present."). The error here, therefore, is that the record does not affirmatively show that Matt himself voluntarily, intelligently, and knowingly waived his right to be present at the conference. *McCarthy*, ¶ 32; *Bird*, ¶ 38; *Tapson*, ¶ 27.

¶27 The premise underlying the State's argument is that defense counsel may, on the defendant's behalf, effectively waive his fundamental right to be present. The State cites

12

no authority in support of this proposition. More importantly, because Article II, Section 24 guarantees the defendant's fundamental right to appear and defend "in person," we are not persuaded that this right may, as here, be summarily waived by counsel absent an on-the-record personal acknowledgment by the defendant that he has been advised of the right to be present and, after consultation with counsel, has voluntarily, intelligently, and knowingly given counsel his proxy to waive that right. *McCarthy*, ¶ 32; *Bird*, ¶ 38. Such a waiver by Matt is not established here.

¶28 In sum, defense counsel's statements do not constitute an effective waiver of Matt's right to be present at the in-chambers conference, and the record does not contain a voluntary, intelligent, and knowing waiver of this right by Matt personally. For these reasons, we reject the State's contention that Matt waived his right of presence.

### Harmless Error

¶29 Having determined that Matt was not present at a critical stage of his trial and that he did not waive his right to be present, we turn to the final inquiry: whether this constitutional violation was harmless.

¶30 The Supreme Court has said that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 827 (1967). Before a federal constitutional error can be held harmless under *Chapman*, the reviewing court "must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24, 87 S. Ct. at 828. Critically, "[t]he State

13

bears the burden of proving that an error passes muster under this standard." *Brecht v. Abrahamson*, 507 U.S. 619, 630, 113 S. Ct. 1710, 1717 (1993); *see also Chapman*, 386 U.S. at 24, 87 S. Ct. at 828 ("[T]he original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment.").

¶31    At the same time, the Supreme Court has recognized that "[s]ome constitutional violations . . . by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless." *Satterwhite v. Texas*, 486 U.S. 249, 256, 108 S. Ct. 1792, 1797 (1988); *see also Chapman*, 386 U.S. at 23, 87 S. Ct. at 827-28 ("[T]here are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error."). However, the Supreme Court has found a constitutional violation to be subject to "automatic reversal" only in "a very limited class of cases." *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 1833 (1999) (internal quotation marks omitted). Examples of such violations include lack of an impartial trial judge (*Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437 (1927)), total deprivation of the right to counsel (*Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792 (1963)), conflict of interest in representation throughout the entire proceeding (*Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173 (1978)), the right to self-representation at trial (*McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944 (1984)), the right to a public trial (*Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210 (1984)), unlawful exclusion of grand jurors of the defendant's race (*Vasquez v. Hillery*, 474 U.S. 254, 106 S. Ct. 617 (1986)), and an erroneous reasonable-doubt instruction to the jury (*Sullivan v. Louisiana*, 508 U.S.

14

275, 113 S. Ct. 2078 (1993)). *See Chapman*, 386 U.S. at 23 n. 8, 87 S. Ct. at 828 n. 8; *Satterwhite*, 486 U.S. at 256, 108 S. Ct. at 1797; *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 1264-65 (1991); *Johnson v. United States*, 520 U.S. 461, 468-69, 117 S. Ct. 1544, 1549-50 (1997).

¶32   These sorts of constitutional violations (listed in the preceding paragraph) require automatic reversal because they are "structural defects" in the constitution of the trial mechanism, *Fulminante*, 499 U.S. at 309, 111 S. Ct. at 1265, because they "infect" and "contaminate" the framework within which the trial proceeds, *Brecht*, 507 U.S. at 629-30, 113 S. Ct. at 1717; *Satterwhite*, 486 U.S. at 257, 108 S. Ct. at 1798; *Fulminante*, 499 U.S. at 310, 111 S. Ct. at 1265, and because they "necessarily render a trial fundamentally unfair," *Rose v. Clark*, 478 U.S. 570, 577, 106 S. Ct. 3101, 3106 (1986). Given the nature of a "structural defect" (as distinguished from "an error in the trial process itself"), structural defects "defy analysis by 'harmless-error' standards." *Fulminante*, 499 U.S. at 309, 310, 111 S. Ct. at 1265.

¶33   For purposes of analyzing whether the violation of Matt's right of presence under Article II, Section 24 constitutes harmless error, we will apply the Supreme Court's harmless-error framework, with one modification, as summarized below. In so doing, we acknowledge that we must "guarantee the minimum rights established by the United States Constitution" but that we otherwise "are not compelled to march lock-step with pronouncements of the United States Supreme Court," *State v. Martinez*, 2003 MT 65, ¶ 51, 314 Mont. 434, ¶ 51, 67 P.3d 207, ¶ 51, since the provisions of Article II "each constitute separate and enforceable constitutional rights insofar as the jurisdiction of the

State of Montana extends," *Madison v. Yunker*, 180 Mont. 54, 60, 589 P.2d 126, 129 (1978).

¶34 We have long recognized the proposition that not all constitutional violations amount to reversible error. *See e.g. State v. LaMere*, 2000 MT 45, ¶¶ 22, 39, 298 Mont. 358, ¶¶ 22, 39, 2 P.3d 204, ¶¶ 22, 39; *State v. Johnson*, 233 Mont. 473, 476-77, 760 P.2d 760, 761-62 (1988). We have also recognized that a constitutional violation requires automatic reversal of a conviction if the violation contaminates the framework within which the trial proceeds or if the constitutional right is so basic to a fair trial that its infraction can never be treated as harmless. *See LaMere*, ¶¶ 23, 48-50. Conversely, a constitutional violation that falls outside this limited class of "automatic reversal" cases must be evaluated for harmlessness. *See LaMere*, ¶¶ 22, 39-45; *see also e.g. State v. Gladue*, 208 Mont. 174, 182-83, 677 P.2d 1028, 1032 (1984).

¶35 Thus, the first question is whether, under the circumstances of the particular case, the violation of the right to be present constitutes a "structural defect"—i.e., whether it contaminated the framework within which the trial proceeded or casts so much doubt on the fairness of the trial that it cannot be treated as harmless—thus requiring automatic reversal. If the violation does not fall in this category, the second question is whether the violation is harmless. In this connection, the Supreme Court has made it clear that "[t]he State bears the burden of proving that an error passes muster under [the harmless-error] standard." *Brecht*, 507 U.S. at 630, 113 S. Ct. at 1717; *see also Chapman*, 386 U.S. at 24, 87 S. Ct. at 828. In implementing this rule, however, we decline to employ the "beyond a reasonable doubt" terminology articulated in *Chapman*, 386 U.S. at 24, 87

16

S. Ct. at 828, and subsequent cases. "Beyond a reasonable doubt" is a standard prescribed for a trier of fact. *See Oberson v. United States Dept. of Agriculture*, 2007 MT 293, ¶ 34, 339 Mont. 519, ¶ 34, 171 P.3d 715, ¶ 34 (Leaphart, Nelson, & Cotter, JJ., concurring) (citing *Branson School Dist. RE-82 v. Romer*, 161 F.3d 619, 636 n. 15 (10th Cir. 1998)). In *Chapman*, the Supreme Court acknowledged that "[t]here is little, if any, difference" between a "beyond a reasonable doubt" standard and a "[no] reasonable possibility" standard. *Chapman*, 386 U.S. at 24, 87 S. Ct. at 828; *see also United States v. Bagley*, 473 U.S. 667, 679 n. 9 105 S. Ct. 3375, 3382 n. 9 (1985). Notably, we apply the latter standard when evaluating whether erroneously admitted evidence contributed to the defendant's conviction. *See State v. Van Kirk*, 2001 MT 184, ¶ 46, 306 Mont. 215, ¶ 46, 32 P.3d 735, ¶ 46. Likewise, here, we conclude that the "no reasonable possibility" standard is preferable, in terms of terminology, to the "beyond a reasonable doubt" standard, given that there is little, if any, difference between these two standards in terms of the burden on the State, and given that this Court does not sit as a fact-finder when evaluating a constitutional violation for harmlessness. Accordingly, the burden on the State is to demonstrate that there is no reasonable possibility the violation of the defendant's Article II, Section 24 right to be present prejudiced the defendant.

¶36 We note that the foregoing analytical approach is similar to, but distinguishable from, the framework set forth in *Van Kirk*. In *Van Kirk*, we articulated a two-step analysis for determining whether an alleged error prejudiced a criminal defendant's right to a fair trial and, therefore, is reversible. As here, the first step is to determine whether the claimed error is "structural," i.e., whether it affects the framework within which the

17

trial proceeds. *See Van Kirk*, ¶ 38. We noted that structural error "is presumptively prejudicial and is not subject to harmless error review." *Van Kirk*, ¶ 38. At this juncture, however, the *Van Kirk* analysis diverges from the approach set out above for analyzing right-of-presence violations. In *Van Kirk*, we explained that, in contrast to "structural" error, "trial" error "typically occurs during the presentation of a case to the jury" and "is amenable to qualitative assessment by a reviewing court for prejudicial impact relative to the other evidence introduced at trial." *Van Kirk*, ¶ 40. We held that, "in order to prove that trial error was harmless, the State must demonstrate that there is no reasonable possibility that the inadmissible evidence might have contributed to the conviction." *Van Kirk*, ¶ 47. "To do this," we explained, "the State must demonstrate that the fact-finder was presented with admissible evidence that proved the same facts as the tainted evidence and, qualitatively, by comparison, the tainted evidence would not have contributed to the conviction." *Van Kirk*, ¶ 47.

¶37 Notably, this "trial error" test also places the burden on the State to demonstrate that the error was harmless. But the substantive inquiries under the test, which focus on admissible and inadmissible evidence (*see Van Kirk*, ¶¶ 40-47), are unsuitable for determining whether a nonstructural, right-of-presence violation is harmless. For one thing, the right to be present at a critical-stage proceeding serves a broader range of interests than simply ensuring that inadmissible evidence is properly excluded at trial. As explained above, the right more generally guarantees the defendant the ability to appear and defend in person and to participate in the presentation and preservation of his or her rights. Moreover, violation of the right to be present is not necessarily harmless just

18

because there is no reasonable possibility inadmissible evidence contributed to the conviction. If the trial judge communicates with a deliberating jury in the defendant's absence (*see e.g. State v. Tapson*, discussed below), a qualitative assessment of the evidence introduced at trial does not reveal whether this violation is harmless. For these reasons, we conclude that *Van Kirk*'s "trial error" test is inapt here and that the State must demonstrate harmlessness in light of the interests the right of presence was designed to protect.

¶38 To summarize, therefore, we hold that once it has been established that the defendant's fundamental right to be present has been violated, prejudice is presumed. If the violation constitutes a "structural defect," then the presumption of prejudice is conclusive, since the error is not amenable to harmless-error analysis. If the violation is not structural, then the State has the burden to rebut the presumption by demonstrating there is no reasonable possibility the violation prejudiced the defendant in light of the interests the right of presence was designed to protect.

¶39 Although this approach has not been articulated in this manner in our recent right-of-presence cases, the approach is nevertheless consistent with our resolutions of those cases. In *State v. Tapson*, 2001 MT 292, 307 Mont. 428, 41 P.3d 305, we decided that Tapson's right to be present was violated when the trial judge entered the jury room to deliver new verdict forms and to instruct the jury, without counsel or Tapson present and without a waiver by Tapson of his right to be present. *See Tapson*, ¶¶ 14-33. As to whether this violation was harmless, we observed that "[a]lthough the most important factor here is the actual intrusion of the Judge into the jury room during deliberations, the

19

lack of a record makes it impossible to say that, beyond a reasonable doubt, there was no prejudice to the defendant, and therefore harmless error." *Tapson*, ¶ 31 (internal quotation marks omitted). Accordingly, we held that the district court had committed reversible error by entering the jury room. *Tapson*, ¶ 33. Implicit in our reasoning are the conclusions that the constitutional violation was amenable to harmless error review and that, absent a showing of harmlessness in the record, the conviction had to be reversed.

¶40 Similarly, in *State v. Bird*, 2001 (2002) MT 2, 308 Mont. 75, 43 P.3d 266, we determined that Bird's right to be present was violated due to his exclusion from a number of individual voir dire sessions conducted in chambers. *See Bird*, ¶¶ 23-40. On the question of whether this violation was harmless, we held that "jury selection errors are 'structural' errors and as such, they are not amenable to harmless error review." *Bird*, ¶ 39 (citing *LaMere*, ¶¶ 39-50). Accordingly, we reversed Bird's conviction and sentence. *Bird*, ¶ 40.

¶41 In *State v. Kennedy*, 2004 MT 53, 320 Mont. 161, 85 P.3d 1279, the trial judge questioned one of the jurors in chambers concerning the juror's telephone contact, on the second day of trial, with a detective who was scheduled to testify. *See Kennedy*, ¶¶ 1, 8, 10. We held that this meeting between the judge and the juror constituted a critical stage of Kennedy's trial. *Kennedy*, ¶¶ 26-27. We further held that the court violated Kennedy's right of presence when it excluded him from this meeting. *Kennedy*, ¶ 27. With regard to whether this violation was harmless, we first observed that, unlike *Tapson*, the record was sufficient to assess whether Kennedy had been prejudiced.

*Kennedy*, ¶ 33. We ultimately concluded that the error was harmless, reasoning that "such exclusion did not cause Kennedy prejudice because any opportunity Kennedy missed to question [the juror] about his conversation with [the detective] was mooted when [the juror] was removed from the jury panel and [the detective] was excluded as a witness." *Kennedy*, ¶ 34. Thus, we found the error in excluding Kennedy from the meeting to be harmless based on the impact (or lack thereof) that this violation had on his right to an impartial jury.

¶42 Lastly, in *State v. Mann*, 2006 MT 160, 332 Mont. 476, 139 P.3d 159, we concluded that the district court violated Mann's constitutional right to be present when it excluded him from a pretrial hearing, the purpose of which was to decide whether Mann would represent himself or proceed with his current counsel. *Mann*, ¶¶ 17, 21. During this hearing, defense counsel portrayed Mann in a negative light. *See Mann*, ¶¶ 20-21. On the question of whether this violation required reversal, we first noted that "we consider the effect the violation has on the defendant to determine whether the defendant suffered any conceivable prejudice." *Mann*, ¶ 15. We then observed that Mann's exclusion from the hearing prevented him from exercising in a meaningful way his constitutional rights to receive effective assistance of counsel or to represent himself at trial. *Mann*, ¶ 21. Accordingly, we reversed his conviction and remanded for a new trial. *Mann*, ¶ 21.

¶43 Turning now to the case at hand, the first question we must answer is whether, under the circumstances of this case, the violation of Matt's right to be present at the in-chambers conference constituted a "structural defect." *Cf. Rushen v. Spain*, 464 U.S.

114, 117 n. 2, 104 S. Ct. 453, 455 n. 2 (1983) (per curiam) (observing that "violations of the right to be present during all critical stages of the proceedings" are subject to harmless error analysis, "unless the deprivation, by its very nature, cannot be harmless"). Matt suggests that the violation constitutes a structural defect under *Tapson* and *Bird*. The State, however, argues based on *Kennedy* and *Mann* that the violation is not structural. We agree with the State. Nothing discussed at the conference and ruled on by the District Court concerned or affected the framework within which Matt's trial proceeded or necessarily rendered the trial fundamentally unfair. The court overruled defense counsel's objection to testimony by a police detective, granted defense counsel's request to call a probation officer to impeach witness Nimocks's credibility, denied defense counsel's request to introduce into evidence the note allegedly written by Oldhorn to Matt while in jail, and denied defense counsel's motion to dismiss for insufficient evidence. None of these issues and rulings contaminated the trial mechanism along the lines that a biased judge, lack of counsel, an erroneous reasonable-doubt instruction, or a jury-selection error would.

¶44 Having determined that the constitutional violation here was not structural, the second question is whether the State has demonstrated that there is no reasonable possibility the violation prejudiced Matt in light of the interests the right of presence was designed to protect. In this regard, we note that the State does not provide a harmless-error analysis in its appellate brief. Rather, the State's analysis under Issue 3 focuses on two matters: whether the in-chambers conference was a critical-stage proceeding, and whether defense counsel validly waived Matt's right to be present at the conference. The

22

State does assert that Matt has failed to demonstrate how his absence "made the in-chambers conference unfair" and how his presence "may have made a difference." These assertions, however, reflect an incorrect assumption that Matt has the burden to demonstrate prejudice flowing from the violation of his right to be present. Apparently in the State's view, if the right of presence is violated, then the violation is presumed harmless and the defendant has to demonstrate the contrary in order to obtain relief. We reject this approach, not only because it is directly contrary to Supreme Court precedent, *see Brecht*, 507 U.S. at 630, 113 S. Ct. at 1717 ("The State bears the burden of proving that an error passes muster under [the harmless-error] standard."), but also because it is not logically sound, *see Chapman*, 386 U.S. at 24, 87 S. Ct. at 828 ("[T]he original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment."). That the burden to show harmlessness is on the State should come as no surprise, given that we reversed the defendant's conviction in *Tapson* because it was "impossible to say that . . . there was no prejudice to the defendant, and therefore harmless error," *Tapson*, ¶ 31 (internal quotation marks omitted), and given that the State has the burden under our analogous test in *Van Kirk* "to demonstrate that the error at issue was not prejudicial," *Van Kirk*, ¶ 42.

¶45 Accordingly, because the State has not met its burden of demonstrating that there is no reasonable possibility Matt was prejudiced by the violation his right to be present at the in-chambers conference, we hold that this constitutional error cannot be deemed harmless.

23

## CONCLUSION

¶46 The in-chambers hearing held in Matt's absence at the close of the State's case-in-chief was a critical stage of his trial, Matt did not validly waive his right to be present at the hearing, and failing to include him at the hearing violated his right under Article II, Section 24 of the Montana Constitution to appear and defend in person. The State has not met its burden of demonstrating that this error was harmless. Accordingly, we reverse Matt's conviction of deliberate homicide (felony murder), vacate the District Court's judgment, and remand this case for a new trial.

¶47 Reversed and remanded for a new trial.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

24

Justice John Warner dissents.

¶48 I dissent. The Court invents a burden on the State to somehow show beyond a reasonable doubt there is no reasonable possibility that Matt's absence from the hearing at the close of the State's evidence prejudiced him. The Court then ignores the record as well as § 46-20-701(1), MCA, and concludes the judgment must be reversed--not because Matt was prejudiced, but because the State did not present a sufficient response to an argument that Matt did not make.

¶49 Today, the Court sneaks up on the State by creating a new burden it must satisfy if prejudice is alleged. The Court's holding today contravenes our holding in *State v. Peters*, 146 Mont. 188, 405 P.2d 642 (1965). In *Peters*, the defendant was not present on motions to exclude evidence and dismiss the information. The Court held a defendant's constitutional and statutory right to be present at trial does not encompass proceedings before the court involving matters of law because he would have merely been a spectator. *Peters*, 146 Mont. at 196, 405 P.2d at 646-47. At the hearing in question in this case, only matters of law were discussed. As the record is complete, and Matt points to nothing of substance where he could have been of assistance to his counsel, nor to any error in the District Court's rulings, this Court should not reverse a conviction on appeal because the State did not invent a prejudice argument for Matt and then proceed to successfully refute it.

¶50 No previous Montana precedent concerning the right to be present requires the State to satisfy a "burden." *See Mann*, ¶¶ 12-17; *State v. Riggs*, 2005 MT 124, ¶ 54, 327 Mont. 196, ¶ 54, 113 P.3d 281, ¶ 54; *Kennedy*, ¶¶ 32-34; *State v. Stroud*, 210 Mont. 58,

25

67-68, 683 P.2d 459, 464 (1984); *See also DuBray v. State*, 2008 MT 121, ¶¶ 36-37, 342 Mont. 520, ¶¶ 36-37, 182 P.3d 753, ¶¶ 36-37. If a defendant's right to be present at a critical stage of his trial is denied, courts are to review for possible constitutional violations "'in light of the whole record.'" *U.S. v. Rosales-Rodriguez*, 289 F.3d 1106, 1110 (9th Cir. 2002) (quoting *U.S. v. Gagnon*, 470 U.S. 522, 526-27, 105 S. Ct. 1482, 1484 (1985)).

¶51 In *Tapson* there is a reference to "reasonable doubt." *Tapson*, ¶ 31. But, the Court imposes no burden on the prosecution to show the error was harmless. Rather than place some sort of burden on the State at the appellate level, this Court should carefully examine the record to determine if the denial of the right to be present could have reasonably contributed to a conviction. If our examination of the record reveals a defendant was prejudiced by his absence, or if the record is inadequate to determine the defendant was not prejudiced by his absence, we have no choice but to reverse a conviction.

¶52 In *Riggs*, the Court determined the district court's error was harmless because "the defendant . . . made no persuasive claim of prejudice arising" from his absence when the court spoke to two jurors outside of his presence. *Riggs*, ¶ 54. The Court recently reiterated the *Riggs* language in *DuBray*. *DuBray*, ¶¶ 36-38. From this language in *Riggs* and *DuBray*, it is obvious a defendant must make a persuasive claim to the appellate court that he was prejudiced.

¶53 The Court today posits the State "incorrect[ly] assum[ed]" Matt has the burden to demonstrate prejudice. Opinion, ¶ 44. However, there is no indication the State assumed

anything. It responded in the only way it could to an unsupported assertion of prejudice--by pointing out that the record showed no prejudice. *Riggs* and *DuBray* stand for the proposition that a defendant who wishes his conviction reversed on appeal because he was absent from a hearing must point to something in the record indicating he might have been prejudiced. Matt did not do so. His real argument is that his absence constitutes structural error and reversal is automatic.

¶54 At the appellate level, parties do not present evidence to carry a "burden" of "persuading a fact-finder to view the facts in a way that favors that party." *Black's Law Dictionary* 190 (Bryan A. Garner ed., 7th ed., West 1999). They make arguments. This Court's job is to consider the arguments, review the record, and then determine which party's argument is more persuasive. By statute and applicable precedent, our appellate review of the record is not to be conducted in terms of burdens of proof. Rather, the decision is to be made by a review of the record to determine if the error resulted in prejudice, as required by § 46-20-701(1), MCA:

> Whenever the record on appeal contains any order, ruling, or proceeding of the trial court against the convicted person affecting the convicted person's substantial rights on the appeal of the cause, together with any required objection of the convicted person, the supreme court on that appeal shall consider the orders, rulings, or proceedings and the objections thereto and shall reverse or affirm the cause on the appeal according to the substantial rights of the respective parties, as shown upon the record. A cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial.

Section 46-20-701(1), MCA. This approach is consistent with our analysis in *Mann* and *Kennedy* where, at the prejudice phase of the analysis, there are no discussions of burdens or standards of proof. *Mann*, ¶¶ 19-21; *Kennedy*, ¶ 34.

27

¶55 The Court quotes *Mann*, saying: "[o]n the question of whether this violation required reversal, we first noted that, 'we consider the effect the violation has on the defendant to determine whether the defendant suffered any conceivable prejudice.'" Opinion, ¶ 42. *Mann* does not place a burden on the State. The language quoted by the Court does not limit this Court's ability to consider the entire record.

¶56 The Court's statement in ¶ 14--that Matt argues the violation of his constitutional right to be present at the hearing at the close of the State's evidence cannot be deemed harmless--is misleading. In the issues Matt presents for appellate review, he first recites a portion of what happened at the hearing, and then states, as a fact, his constitutional right to be present was violated. The thrust of Matt's argument concerning this appeal issue is simply that this Court, in *Bird* and in *Tapson*, concluded a structural error existed if a defendant was not present at a critical stage of his trial, and had not waived his presence. Matt then acknowledges the Court backed away from that rule in *Kennedy*, but goes on to state that *Kennedy* is no longer good law as the United States District Court disagreed with that decision. Thus, Matt's primary argument is that this Court should conclude his absence at the hearing in question was structural error, and thus the judgment must automatically be reversed.

¶57 In an offhand assertion, without even attempting a harmless error analysis, Matt's brief states in a conclusory fashion that it is "easy to conceive" how his absence created prejudice. Matt does not make any argument supported by authorities that any of the rulings of the District Court at the hearing in question were erroneous, that things would

28

have been different had he been there, or that he was in any way led astray. He only states in a conclusory fashion he was prejudiced.

¶58 In ¶ 15, the Court mentions that the State argued the in-chambers hearing was not a critical stage of the trial. The Court decides this was a critical stage of the trial. The Court then notes the State argued that a violation of a defendant's right to be present is not necessarily a structural error. The Court agrees that Matt's absence was not a structural error. The Court then reverses Matt's conviction by overlooking that the State responded in the only way it could to Matt's offhand, unsupported claim he was somehow prejudiced by his absence at a critical stage of his trial. As Matt did not say how he was prejudiced, the State pointed out in its response brief that Matt failed to demonstrate how his absence prejudiced him.

¶59 Matt made no attempt to point out any error in the District Court's rulings at the in-chambers hearing. He did not make a cogent argument how his presence would have made any substantial difference. Nor did he make any intelligible argument concerning how he suffered prejudice because of his absence. The Court has ignored its oft repeated rule that it will not consider unsupported arguments in support of positions taken on appeal. *State v. Humphrey*, 2008 MT 358, ¶ 11, 346 Mont. 150, ¶ 11, 194 P.3d 643, ¶ 11 (declining to consider an issue because defendant's argument consisted of an "offhand assertion" supported only by one distinguishable case); *State v. Ochadleus*, 2005 MT 88, ¶ 32, 326 Mont. 441, ¶ 32, 110 P.3d 448, ¶ 32 (citing *State v. Rodarte*, 2002 MT 317, ¶ 15, 313 Mont. 131, ¶ 15, 60 P.3d 983, ¶ 15). Even under the Court's incorrect analysis

of the law, it is improper to reverse the judgment because the State did not adequately refute arguments Matt did not make.

¶60 The record affirmatively shows that Matt's presence at the hearings would have been useless, as the District Court's rulings were all correct. The United States Constitution and the Montana Constitution do not assure "'the privilege of presence when presence would be useless, or the benefit but a shadow.'" *State v. Schenk*, 151 Mont. 493, 499, 444 P.2d 861, 864 (1968) (quoting *Snyder v. Commonwealth of Massachusetts*, 291 U.S. 97, 54 S. Ct. 330 (1934), *overruled on other grounds, Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489 (1964)). The end result of this case is that a deliberate homicide conviction is reversed, based on the shadow of a benefit--at best--to Matt.

¶61 Matt and his counsel will be thrilled that the Court has taken this opportunity to reverse his conviction by creating a new appellate burden that he neither thought of nor argued for, and that the State had no inkling that it was required to satisfy. However, I dissent.

_____
                                    Justice

District Court Judge Laurie McKinnon, sitting in for Justice Morris, joins in the foregoing dissent.

_____
                                    District Judge

30

Chief Justice Karla M. Gray, specially concurring.

¶62    I concur in the Court's Opinion.  I write separately to address the foregoing Dissent's reliance on *State v. Riggs*, 2005 MT 124, 327 Mont. 196, 113 P.3d 281, and *DuBray v. State*, 2008 MT 121, 342 Mont. 520, 182 P.3d 753.  In my view, both cases are readily distinguishable on their procedural facts and, therefore, also inapplicable on the law.  I premise my concurrence, however, on a much more fundamental—indeed, fatal— flaw in relying on *Riggs* and *DuBray*.

¶63    The United States Supreme Court has held that, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *See Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967).  Implicit in this standard is the premise that a constitutional error is harmful on its face, unless shown to be otherwise.  Indeed, the Supreme Court pointed out that "the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment." *Chapman*, 386 U.S. at 24, 87 S. Ct. at 828.  Accordingly, the Supreme Court has stated that "[t]he State bears the burden of proving that an error passes muster under [the *Chapman*] standard." *Brecht v. Abrahamson*, 507 U.S. 619, 630, 113 S. Ct. 1710, 1717 (1993).

¶64    This Court is not required to march lockstep with pronouncements of the United States Supreme Court if Montana's Constitution provides greater protection than is guaranteed by the United States Constitution.  We are required, however, to guarantee the

minimum rights established by the United States Constitution. *See State v. Martinez*, 2003 MT 65, ¶ 51, 314 Mont. 434, ¶ 51, 67 P.3d 207, ¶ 51. As a result, we simply cannot—in the face of a violation of the constitutional right to be present at critical stages—ignore the Supreme Court's determination that the State bears the burden of proving that a constitutional error passes muster under the *Chapman* standard.

¶65   Finally, the Dissent's concern over the burden placed on the State here is, in my view, somewhat excessive. The "burden" being placed in this case is, first, on defense counsel to stop purporting to waive the rights of the accused being represented and, instead, to insist on the presence of the client. The burden is placed, secondarily, on the trial court to stop allowing such nonchalant waivers. If counsel for the accused and for the State work to ensure that criminal defendants are present at critical stages, the State will not face any additional burden at all.

_____
Chief Justice

Justices Patricia O. Cotter, James C. Nelson and W. William Leaphart join in the foregoing special concurrence of Chief Justice Karla M. Gray.

_____

_____

_____
Justices

Justice Jim Rice, dissenting.

¶66    I cannot conclude there is reversible error when a trial judge, during a mid-trial conference, inquires of defense counsel concerning the presence of the defendant and receives defense counsel's assurance that the defendant's presence is not necessary, and then conducts the conference without the defendant. I agree with the State that we should affirm on waiver grounds, as I believe defense counsel's actions constitute invited error and that reversal on such grounds undermines our legal system.

¶67    Of course, no objection was made with regard to Matt's presence in the conference at issue here. Just the opposite, in response to the District Court's inquiry, defense counsel assured the court that the conference could continue without the Defendant. In *Williams v. Fla.*, 687 So. 2d 858 (Fla. Dist. App. 1997), the Florida court concluded that such actions by defense counsel with regard to his client's presence during trial constituted "invited error" which was not reversible. "It is well-established law that where the trial judge has extended counsel an opportunity to cure any error, and counsel fails to take advantage of the opportunity, such error, if any, was invited and will not warrant reversal." *Williams*, 687 So. 2d at 859 (citations omitted).

¶68    Here, the District Court gave defense counsel the explicit opportunity to correct the error, but counsel did not do so. Under these circumstances, defense counsel's waiver of the defendant's right to appear should be affirmed to protect the integrity of the trial process from invited error. A trial judge must be able to rely upon the assurances given by defense counsel in response to issues raised by the judge during the course of the trial

33

if the legal system is to properly function. We should not burden the judge with the duty of second-guessing defense counsel's trial decisions, as there is a process in place for counsel's actions to be later challenged and reviewed. Indeed, a trial involves numerous potential waivers of a defendant's constitutional rights, such as the decision to forego cross-examination of a state witness, the decision for a defendant to testify, and the decision to pass a jury panel for cause.

¶69 I would affirm on the basis of this invited error. The Defendant, if he chose, could pursue the recourse of challenging his counsel's actions within a post-conviction proceeding as ineffective.

Justice

Honorable Laurie McKinnon joins in the dissenting Opinion of Justice Jim Rice.

Honorable Laurie McKinnon, District Court
Judge, sitting in place of Justice Brian Morris